635 So.2d 309 (1994)
Thomas HUSBAND, et al.
v.
LAFAYETTE INSURANCE COMPANY.
No. 93-CA-815.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1994.
Brian P. Quirk, New Orleans, for plaintiffs/appellants, Thomas Husband, et al.
Geoffrey H. Longenecker, Covington and Anderson Council, Kenner, for defendant/appellee, Lafayette Ins. Co.
*310 Before BOWES, GAUDIN and WICKER, JJ.
BOWES, Judge.
The plaintiffs, Shirley Ann Majors Husband and Thomas Husband, filed this suit against Lafayette Insurance Company (hereinafter "Lafayette") seeking to collect under an All Risk policy issued by Lafayette for a house owned by plaintiffs which was damaged by a tenant. Lafayette filed a third party demand against the tenant, G. Carlos Harris, and plaintiffs subsequently amended their suit to name Harris as a defendant. After trial on the merits, the court found that coverage existed under the policy and ruled in favor of plaintiffs, and against Lafayette and G. Carlos Harris, in solido, for $7,512.79. The trial court also ruled in favor of plaintiffs and against Harris for $2,800.00 (representing unpaid rent) and awarded attorneys fees to plaintiffs and against Harris of $700.00. Plaintiffs have appealed, alleging that the damages assessed by the trial court were inadequate. Lafayette also appealed alleging that 1) the trial court erred in finding that coverage existed under the policy; and 2) the trial court erred in finding that the plaintiffs proved a loss. Although Harris made a general appearance through counsel in this case, he did not appear at trial, nor did he appeal the judgment against him. We amend the judgment to increase the award of damages and of attorney fees and, as amended, affirm the judgment of the trial court.

FACTS
The facts of this case show that the plaintiffs built the house in 1979 and resided there for approximately nine years, or until 1988, when Mr. Husband accepted employment in Chattanooga, Tennessee. Due to a deflated real estate market, the plaintiffs could not find a buyer for the house, so they decided to lease it. The plaintiffs hired a local real estate agent, Carol Biddle-Frome, to list and to handle the lease of their house. The house was initially leased to the Ballouns, who resided in the house for two years, from August 1988 to July 1990.
In August of 1990, the house was leased to defendant, G. Carlos Harris. The lease agreement executed on August 7, 1990, provided in pertinent part:
OCCUPANCY Should Lessee be unable to obtain occupancy on the date of the beginning of the lease due to causes beyond
 control of Lessor, this lease shall not be affected thereby, but Lessee shall owe rent beginning only with the day
 on which he can obtain possession.
 Should the property be destroyed or materially damaged so as to render it wholly unfit for occupancy by fire or
 other unforeseen event not due to any fault or neglect of Lessee, then Lessee shall be entitled to a credit for the
 unexpired term of the lease. However Lessee shall not be entitled to a reduction of the monthly rent or cancellation
 of this lease because of a temporary failure of utilities, heat, air conditioning or temporary losing of swimming pool.
ADDITIONS & Neither Lessor nor Lessee shall make additions or alterations to the premises without written permission of the
ALTERATIONS other. However, Lessor or his employees shall have the right to enter the premises for the purpose of making repairs
 necessary to the preservation of the property. Any additions made to the property by the Lessee shall become the
 property of Lessor at the termination of this lease unless otherwise stipulated herein.
 No holes shall be drilled in the walls, woodwork or floors and no antenna installations are permitted. No painting
 or preparing of walls is permitted.
 No water beds. No foil in windows. No hurricane tape allowed to stay in windows after danger ceases.
OTHER A temporary visitor is one who inhabits the property for no more than ten (10) days.
CONDITIONS
 In the event the subject property is sold to any party during the term of this lease. The Prudential Louisiana
 Properties shall receive a _________________ % commission of the gross sales price of the property.
 READ YOUR LEASE BEFORE SIGNING
At the signing of the lease, Mr. Harris executed two checks, one for a $1000.00 security deposit, and one for $600.00 representing prorated rent for the month of August.
Shortly after signing the lease, and without the knowledge or approval of the plaintiffs, Harris made many significant alterations to the decor of the house. He painted over panelled walls, wallpapered walls, stained *311 wood moldings and doors and the brick fireplace. He ripped up carpeting and replaced it with linoleum. He also placed mirrored tiles on both the wallpaper and painted walls. The work performed by Mr. Harris was shoddy and extremely unprofessional. As stated by the trial court in her findings of fact "It is an understatement to say that the alterations were disastrous."
Harris vacated the house during the first week of September due to an unrelated racial incident involving the neighbor next door. At this time, Carol Biddle discovered the alterations which had been made and she notified the plaintiffs. Additionally, the checks issued by Harris were returned by his bank marked "Account Closed," leaving plaintiffs with no rent and no security deposit.
The plaintiffs filed a claim with Lafayette, the insurance carrier of the All Risk policy covering the house. They were initially informed by the insurance adjuster that the damage was not covered as tenant abuse. At trial of this matter, Lafayette contended that the coverage should be denied as a result of a faulty, inadequate or defective workmanship exclusion in the policy. The trial court found that because the renovations were not authorized by the insured, coverage was not excluded.

ANALYSIS
It is well established that an insurance policy is the contract between the parties, and as such, must be interpreted in accordance with general principles of contract construction. Kupperman & Co., Inc. v. Buffalo Ins. Co., 535 So.2d 1 (La.App. 4 Cir.1988). Courts are bound to give legal effects to all contracts, including contracts of insurance, according to the true intent of the parties, which is to be determined by the words in the contract when they are clear and explicit and lead to no absurd consequences. Foret v. Louisiana Farm Bureau Cas. Ins., 582 So.2d 989 (La.App. 1 Cir.1991) citing Bardwell v. American National Ins. Co., 94 So.2d 313 (La.1957). An insurance contract shall be construed as a whole and one section is not to be construed separately or at the expense of disregarding other sections. Benton Casing Service v. Avemco Ins. Co., 379 So.2d 225 (La.1979). Any ambiguity in a policy of insurance must be liberally construed in favor of the insured and against the insurer. If the ambiguity relates to limitation of liability under the policy, the provision will be liberally interpreted in favor of coverage. Pomares v. Kansas City Southern Railway Company, 474 So.2d 976 (La.App. 5 Cir.1985) writ denied, 477 So.2d 1131 (La. 1985).
Lafayette claimed that the damage caused by Harris was excluded under the following policy provision:
We do not insure for loss to property described in Coverages A and B caused by any of the following:
* * * * * *
3.) Faulty, inadequate or defective:
* * * * * *
b.) design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c.) materials used in repair, construction, renovation or remodeling: or
d.) maintenance: of part or all of any property whether on or off the described location.
Based on the evidence presented at trial, the trial judge found that the so-called renovations performed by Harris were not excluded from coverage because these renovations were not approved by the insured:
This court interprets the exclusion contained in the pertinent policy provisions to apply to situations where the insured or someone authorized by the insured contracts for alterations to the property and is dissatisfied with the quality of the performance under that contract. The insurer by this exclusion intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured of someone authorized by him.
However, in this case the alterations were undertaken without authorization and in direct conflict with the terms of the lease, and therefore fall outside the exclusion of the policy.
*312 The trial court further found that the language of the exclusion was ambiguous:
Additionally, the language in the exclusion is patently ambiguous. Would the qualifying sentence "However, any ensuing loss not excluded is covered." mean that there is no coverage, for instance, for loss of the wallpaper upon which the mirrored tiles were glued, but the "ensuing loss" of the wallpaper where the glued tiles caused the paper to peel would be covered or that there is no coverage for the re-installation of a leaky window replacement, but there is coverage for carpet damaged by the leaky window? This ambiguous language, if construed in favor of the insured, writes out the exclusion relied upon by defendant.
We agree with the conclusions reached by the learned trial judge. In this case, the policy in question was "Dwelling Policy" with a "Landlord Premise Liability Endorsement" on an "All Risk" format. Therefore, all risks are covered unless clearly and specifically excluded.
At the trial, James H. Moore, a State Farm agent of twelve (12) years testified as an expert in the area of insurance on behalf of plaintiffs. He testified that he reviewed Lafayette's policy and concluded that the exclusion at issue was not applicable in this case because the "renovations" were not performed by the insured or by someone authorized to do so by the insured (i.e., a contractor). In contrast, Jay Daussin, claims supervisor for defendant (and thus not an independent witness), testified that the insured's authorization was irrelevant. Daussin also testified that the damage herein was excluded as tenant abuse, which he defined as everyday wear and tear of the property.
After a careful review, we find no error in the trial court's reliance on Mr. Moore's testimony and her conclusion that the "Faulty Workmanship" exclusion covers only those renovations performed by or authorized by the insured under the terms of the policy. The fact that the renovations were faulty does not change the nature of the damages herein. Had the renovations been satisfactory, the damage nevertheless would have occurred.
Jay Daussin also testified that these renovations were excluded under the policy under the novel classification of "tenant abuse" which he defined as "ordinary" wear and tear. We have reviewed the policy in question and find that while normal wear and tear is excluded under the terms of the policy, there is no such exclusion for tenant abuse. In this case, Harris' actions obviously went far beyond what constitutes normal wear and tear of the property. However, Harris' actions did constitute an abuse of the property and so may be classified as tenant abuse. Since tenant abuse is not specifically excluded form coverage under the policy, such resulting damage is covered under this "All Risk" policy.
Therefore, we hold that the damages complained of in this case were not excluded under the terms of the policy at issue.
We also note that the trial court found that the exclusionary clause was invalid because it was ambiguous. Because we find the exclusion not applicable, we need not determine the correctness of this ruling at this time. However, we note that the policy at issue does not contain a definition of the term "ensuing loss."
Lafayette next argues that the trial court erred in finding that a loss occurred under the terms of the policy. However a review of the record reflects that the plaintiffs were obligated to repair and/or replace several "renovations" made by Harris. Thus, the trial court committed no manifest error in her determination that a loss occurred.
In addition, both parties argue that the trial court erred in its award of damages.
Plaintiffs argue that the trial court should have awarded to them $22,205.32, the estimated amount to place the property in the condition prior to Harris' alterations. However, the trial court found that the plaintiffs expended $7,512.79 in repairs to the property and that they subsequently sold the property. Plaintiffs did not present any evidence to show that they could have sold the property for a greater amount had they restored it to its original condition, and, therefore, *313 they have proved a loss of only what they expended to repair the property.
Plaintiffs also argue that the trial court erred in omitting several expenditures actually made by them in repairing the property, namely $66.00 for replacement of the dead bolt locks; $120.92 to the Gurvich Detective Agency to attempt to locate Harris; $66.71 to LP & L for electricity utilized while the repairs were in progress; $50.00 to Coeval Construction for an estimate of damages; and $43.30 for film. Plaintiffs point out that Lafayette did not object to the introduction of and, in fact, did stipulate to these items as damages.
In light of Lafayette's stipulation, it appears that the trial court erred in failing to assess these items as damages. Plaintiffs also argue that the trial court erred in failing to include the cost of replacing the window treatments in the house, which Mrs. Husband testified was $1,500.00. We find that the plaintiffs are entitled to an additional $1,803.63 in damages.
Accordingly, we will amend the judgment in favor of plaintiffs and against Lafayette and Harris in solido to $9,316.42 to reflect the addition of these amounts expended by plaintiffs in repairing the house.
Finally, plaintiffs argue that the trial court erred in its assessment of attorney fees against Harris.
The lease agreement executed between plaintiffs and Harris provides, in pertinent part:
In the event of any damage to the leased premises or equipment therein, reasonable wear and tear excepted, caused by Lessee, his family, guests or agents, Lessee agrees to pay Lessor when billed the full amount necessary to repair or replace the damaged premises or equipment.
Deductions will be made from the security deposit to reimburse Lessor for the cost of repairing any damage to the premises or equipments or the cost of replacing any of the articles or equipment that may be damaged beyond repair, lost or missing at the termination of the lease. Deductions will also be made to cover any unpaid amounts owed to Lessor for any such damage or loss occurring prior to termination of the lease and for which Lessee has been billed. In the event that such damages or cleaning charges exceed the amount of the security deposit, Lessee agrees to pay all excess cost to Lessor. In the event there has been a forfeiture of the security deposit, charges for damages and cleaning shall be paid in addition to the amount of the said security deposit.
* * * * * *
Lessee further agrees that if an attorney is employed to protect the rights of the Lessor hereunder, Lessee will pay the fee of such attorney. Such fee is hereby fixed at twenty-five (25%) percent of the amount claimed or a minimum of $100.00 whichever is greater. Lessee further agrees to pay all court costs and sheriff's charges if any.
In this case, plaintiffs, as Lessors, found it necessary, because of Harris' actions, to hire an attorney to enforce collection of the unpaid rents which the trial court assessed as $2,800.00 and for the amounts to repair the damages caused by Harris, which we find to be $9,316.42.
Accordingly, plaintiffs are entitled to collect from Harris as attorney fees $3,029.11 which is 25% of the total amount of $12,115.42 to which plaintiffs are entitled under the terms of the lease. Compare Day Leasing and Ins. Inc. v. Hart, 619 So.2d 114 (La.App. 1 Cir.1993).
For the above discussed reasons, the judgment of the trial court is amended to read as follows:
IT IS HEREBY ORDERED that there be judgment herein in favor of Shirley Ann Majors, wife of and Thomas Husband and against Lafayette Insurance Company and G. Carlos Harris, III, jointly, severally, and in solido in the full sum of Nine Thousand Three Hundred Sixteen and 42/100 ($9,316.42) Dollars, together with legal interest thereon from date of judicial demand and for all costs of these proceedings.
IT IS FURTHER ORDERED that there be judgment herein in favor of Shirley Ann Majors, wife of and Thomas Husband *314 and against G. Carlos Harris, III in the full sum of Twenty-Eight Hundred ($2,800.00) Dollars, and for attorneys' fees in the amount of Three Thousand Twenty-Nine and 11/100 ($3,029.11) Dollars, together with legal interest thereon from date of judicial demand and for all costs of these proceedings.
IT IS FURTHER ORDERED that there be judgment herein in favor of Lafayette Insurance Company and against G. Carlos Harris, III in the full sum of Nine Thousand Three Hundred and Sixteen and 42/100 ($9,316.42) Dollars, together with legal interest thereon from date of judicial demand and for all costs of these proceedings.
All costs are divided equally between plaintiffs/appellants and defendant/cross-appellant/Lafayette Insurance Company.
AMENDED, AND AS AMENDED, AFFIRMED.