567 So.2d 707 (1990)
Danny Edward McWRIGHT, et al., Plaintiffs-Appellees,
v.
MODERN IRON WORKS, INC., et al., Defendants-Appellants.
No. 21714-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*708 Adams and Reese by Thomas G. O'Brien and A. Kirk Gasperecz, New Orleans, for defendant-appellant, Gibraltar Cas. Co.
Watson, Murchison, Crews, Arthur & Corkern by William P. Crews, Jr., Natchitoches, for plaintiffs-appellees.
Brittain, Williams, McGlathery, Passman & Sylvester, by Joe Payne Williams, Natchitoches, for defendant-appellee Modern Iron Works.
Gold, Weems, Bruser, Sharp, Sues & Rundell, by Edward E. Rundell, Alexandria, for intervenor, Southeast Lumber Mfrs. Ass'n Self-Insurors Fund.
Before MARVIN, C.J., and FRED W. JONES, Jr., and JASPER E. JONES, JJ.
MARVIN, Chief Judge.
In this declaratory judgment action to interpret the products hazard liability coverage of an "Umbrella" or "excess" policy written for a machinery manufacturer, Gibraltar Casualty Company appeals a summary judgment declaring that its umbrella policy, because of ambiguous language, "drops down" and provides primary coverage to its insured, Modern Iron Works, Inc., the manufacturer-defendant, whose primary liability insurer was declared insolvent.
We reverse. Kelly v. Weil, 563 So.2d 221 (La.1990); Robichaux v. Randolph, 563 So.2d 226 (La.1990).

POSTURE
The action arose out of an on-the-job injury sustained in 1984 by McWright, an employee of a lumber mill, who was struck by a piece of lumber that was forcibly propelled from a milling machine, known as a bull-edger, manufactured by Modern Iron Works.
During the course of McWright's initial action for damages, the primary or underlying liability insurer of Modern Iron Works, Mutual Fire, Marine and Inland Insurance Company, which was created and domiciled in Pennsylvania, suffered financial straits. A Pennsylvania court, after first suspending all proceedings against Mutual and then placing Mutual under supervised rehabilitation, eventually declared Mutual insolvent in 1989.
Plaintiffs McWright, his wife, his employer, and its worker's compensation association that had paid benefits to McWright, joined Gibraltar and the Louisiana Insurance Guaranty Association (LIGA) in the action when the Pennsylvania court suspended proceedings against Mutual. After the action against LIGA was dismissed [because Mutual was not authorized to write insurance in Louisiana] and after Mutual was declared insolvent under Pennsylvania law, the plaintiffs then sought declaratory relief and interpretation of the Gibraltar policy in the separate declaratory action filed in 1989.
Both Gibraltar, on the one hand, and the plaintiffs, on the other, moved for summary judgment. The trial court, in one judgment, granted the summary judgment in favor of plaintiffs, decreeing "drop down," and denied summary judgment to Gibraltar. Gibraltar's appeal questions both rulings.
Gibraltar contends that Endorsement Five of its policy [Gibraltar's products hazard liability coverage ... does not apply... unless ... [the products hazard liability is also] covered by valid and collectible *709 underlying insurance] compels that we should interpret its insurance contract as written and negate coverage. Plaintiffs contend that the contract [policy and endorsement] presents ambiguities primarily because no language in the contract provides for Gibraltar's liability if the underlying insurer is declared insolvent.
After the judgment was appealed, the supreme court rendered its opinions in Kelly, and in Robichaux, which are cited supra. Kelly overruled Poirrier v. Cajun Insulation, Inc., 501 So.2d 800 (La.App. 4th Cir.1986), writ denied, upon which the trial court and plaintiffs relied. See our discussion of Kelly, infra.
Mutual wrote the "underlying insurance" which is mentioned in, and listed in Schedule A of, Gibraltar's policy. The liability, if any, of Modern Iron Works to McWright was "covered" by the Mutual policy but the liability proceeds of Mutual's policy obviously are not "collectible" after Mutual was declared insolvent.

CASE LAW
The terms of the excess policy determine the liability of the excess insurer in the event of the underlying insurer's insolvency. Louisiana Ins. Guar. v. Intern. Ins. Co., 551 So.2d 50 (La.App. 1st Cir. 1989). Gibson v. Kreihs, 538 So.2d 1057 (La.App. 4th Cir.1989), writ denied.
The insurance contract is to be construed as a whole. Labels and headings given to the respective parts of the contract are pertinent to the inquiry of coverage, but neither the language or placement of one part of the contract should be construed separately and at the expense of disregarding other parts of the contract. Benton Casing Service, Inc. v. Avemco Ins., 379 So.2d 225, 231 (La.1979). A provision of an insurance policy limiting liability or negating coverage that is otherwise provided will be given effect if it is clear and unambiguous. Sargent v. La. Health Serv. & Indem. Co., 550 So.2d 843 (La.App. 2d Cir.1989).
Excess or umbrella liability policies have been considered in other cases where the underlying liability insurer became insolvent. Kelly v. Weil, cited supra, discussed three categories of cases that produce varied results depending upon the language in the particular policy. Gibraltar's umbrella policy, as we shall discuss, is more akin to Kelly's second and third categories of cases where the policy language speaks of the excess coverage being in excess of the limits that are covered by the underlying insurance listed in a schedule of the excess policy.
The "drop down," which was declared in the summary judgment in favor of plaintiffs and urged here, occurs in the first category of cases mentioned in Kelly. In that category are cases on excess liability policies that provide that the underlying limit of the excess coverage depends upon the "collectibility or recoverability" of the underlying insurance. 563 So.2d at 222.
In a companion case to Kelly, the court denied "drop down," emphasizing that a specific section of that policy provided for the insolvency of the underlying insurer. Robichaux, 563 So.2d at 226. Because of the specific provision in the Robichaux policy, that case adds a fourth category.

AMBIGUITY GENERALLY
We agree with Kelly, supra, and Nasello v. Transit Cas. Co., 530 So.2d 1114 (La.1988), which state or suggest there is no ambiguity in a liability insurance contract simply because the contract uses a phrase such as "collectible" insurance.

GIBRALTAR'S POLICY LANGUAGE
The policy is written on a GCC 4 (11-78) form. In the insuring agreement, p. 1 of the policy, Gibraltar obligates itself to pay "the Ultimate Net Loss, in excess of the applicable underlying or retained limit, which the insured shall become legally obligated to pay as damages because of ... Personal Injury ..."
Gibraltar limits its liability by this language on p. 2 of its policy:
Regardless of the number of ... coverages under which Ultimate Net Loss is insured in this policy, Gibraltar's liability with respect to Personal Injury ... shall *710 be only for the Ultimate Net Loss in excess of the Insured's Retained Limit...
[and further provides]
If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of Personal Injury ... Gibraltar will ... subject to Gibraltar's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance... in excess of the reduced or exhausted limits.
The Schedule A Underlying Insurance page of the policy lists Mutual as providing coverage for Products/Completed Operations Liability with underlying limits of $500,000. Other liability coverages of Gibraltar's policy lists Hartford as providing liability coverage in these respects with underlying limits:

Employer's Liability $100,000One Accident
Comprehensive
General Liability $500,000. Single Limit
Comprehensive
Automobile Liability $500,000. Single Limit

Endorsement Five, hereafter discussed, affects only the Products/Completed Operations Liability and not the Hartford liabilities listed in Schedule A.
By definition, in Sec. V(I), p. 3, the insured's Retained Limit is "an amount equal to the applicable limit(s) of liability stated in Schedule A plus the limit(s) of any other insurance collectible by the insured..." Compare cases in Kelly's category three.
As a "Condition" of the policy, Sec. VII(A), the insured is obligated to "maintain the underlying policies ... in Schedule A in full effect ..., except for any reduction or exhaustion of the ... limits ... in such policies solely by payment of claims... Failure ... to comply with the foregoing shall not invalidate this policy, but in the event of such failure, Gibraltar shall be liable only to the extent that it would have been liable had the named Insured complied therewith."

ENDORSEMENT FIVE
We have no difficulty concluding that the Gibraltar policy language, above quoted, unambiguously precludes the "drop down" decree of the trial court. Kelly, supra.
With the quoted language in the Gibraltar policy, we must consider the effect of Endorsement Five to the policy. Plaintiffs contend that this endorsement and other semantical differences between the Gibraltar language and Kelly render the Gibraltar insurance contract ambiguous and require us to affirm the "drop down" declared by the trial court.
Gibraltar contends that Endorsement Five unambiguously precludes or negates all "excess" coverage for Products Hazard liability (the thrust of Gibraltar's motion for summary judgment below, which was denied in the judgment appealed).
We do not agree with either contention.
We emphasize that Endorsement Five, written three days after, and attached to, the policy, states
... that the coverage provided by this policy does not apply to liability arising out of the Products Hazard or the Completed Operations Hazard unless such liability is covered by valid and collectible underlying insurance as per Schedule A Underlying insurance ...
Standing alone, the endorsement in unambiguous and clear language says ... the coverage provided [by Gibraltar for Products Hazard liability] does not apply ... unless such liability is covered by valid and collectible underlying insurance ... Unlike the Kelly category one cases which speak of the amount or limit of the excess insurance being based on the amount or limit recoverable or collectible from underlying insurance, the Gibraltar endorsement speaks of the excess products hazard liability coverage being contingent on liability being covered by valid and collectible underlying insurance. The printed language of the endorsement states that "... this policy is hereby amended as indicated. All other terms and conditions remain unchanged."

*711 THE ENDORSEMENT'S EFFECT
An insurer may change or amend the coverage provided by its insurance policy by an endorsement attached to the policy as long as the endorsement does not conflict with statutory law or public policy. Rozas v. La. Hospital Service, Inc., 413 So.2d 364 (La.App. 3d Cir.1982). Where an attachment to the policy conflicts with the terms of the policy, the attachment will control. If coverage is provided in the policy, but then excluded in the attachment to the policy, coverage will be excluded. Rozas, supra; LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245 (1943); Smith v. Western Preferred Cas. Co., 424 So.2d 375 (La.App. 2d Cir. 1982), writ denied. Compare McGuire v. Davis Truck Services, Inc., 518 So.2d 1171 (La.App. 5th Cir.1988), writ denied, where two or more policy provisions of equal stature conflicted, one of which was somewhat similar to Gibraltar's Endorsement Five. The policy in McGuire required interpretation under a different legal standard and in favor of the insured.
Here the critical conflict is not between provisions in the policy, but between the printed policy provisions that are dated May 2, 1983, and the typewritten and printed provisions of Endorsement Five dated three days later.
This conflict does not require "drop down" and the endorsement is not equivocal or ambiguous simply because of the conflict. Under the standards for interpreting contracts set forth in the cases above cited, the conflicting endorsement would control. See cases cited supra. See also Couch on Insurance 2d (Rev. ed.) § 4:28 (1984) and 15 La.Civil Law Treatise (McKenzie and Johnson) § 4 (1986). Neither the policy nor the endorsement nor Kelly authorizes the "drop down" decreed in the trial court's judgment.
We cannot agree, however, that all Gibraltar coverage is precluded. The terms "valid and collectible" in the endorsement describe the underlying products hazard liability coverage the insured is required to provide as the basis for Gibraltar's excess products hazard liability coverage. When Gibraltar "writes" the contract, Gibraltar imposes this requirement on the insured and obviously "approves" the underlying liability insurers and respective coverages listed in its Schedule A. Gibraltar bases its excess coverage of the products hazard liability on whether that liability "is covered by valid and collectible underlying insurance per Schedule A ..."
The date on which the loss or exposure occurs is the date on which the question of Gibraltar's excess coverage is to be determined. Backhus v. Transit Cas. Co., 532 So.2d 447 (La.App. 1st Cir.1988), affd., 549 So.2d 283 (La.1989). The excess coverage issue should be stated as whether the liability was "covered by valid and collectible underlying insurance" on the date of Plaintiff McWright's accident in 1984.
An insurer that relies on a provision in its contract to negate or preclude coverage otherwise provided, has the burden of proving the circumstances under which the negation or preclusion applies. See Capital Bank & Trust v. Equitable Life, 542 So.2d 494 (La.1989).
This record does not show whether Mutual's underlying products hazard liability insurance was valid and collectible in 1984. Mutual's insolvency was declared in 1989, long after plaintiffs instituted the action for personal injury damages. We must conclude that Gibraltar fails in its burden and that Endorsement 5 simply is not applicable to preclude or negate all excess products hazard liability coverage that arises from McWright's accident. Gibraltar obviously approved Mutual as the underlying insurer of products hazard liability when it wrote Schedule A and its policy and when it wrote Endorsement Five to the policy. We cannot conclude that Mutual's underlying products hazard liability coverage was not valid and collectible insurance on either of those two dates or on the date of McWright's accident. We shall therefore render summary judgment declaring that Gibraltar's excess products hazard liability coverage applies to the demands of plaintiffs.

*712 CONCLUSION; DECREE
Accordingly, we reverse the judgment of the trial court and render judgment to this extent:
The motion for summary judgment by the plaintiffs is denied. The motion for summary judgment by Gibraltar, decreeing that Gibraltar's excess liability for products hazard liability begins at $500,000.01, is granted. Costs are assessed to plaintiffs.
REVERSED and RENDERED.