579 So.2d 1145 (1991)
Paul Edward LINDSEY, et al., Plaintiffs,
v.
Raymond POOLE, et al., Defendants.
No. 22396-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
Rehearing Denied June 13, 1991.
*1146 Bailey & Dawson by Jack M. Bailey, Shreveport, for plaintiffs-appellants.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for appellees, Safety Mut. Cas.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., Shreveport, for Intervenor, Hartford Acc. Co.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Plaintiffs appeal a judgment declaring that the uninsured/underinsured coverage provided by the defendant excess insurer is neither primary nor "drops down." For the reasons hereinafter expressed, we affirm.

FACTS
On June 15, 1985, while in the course and scope of his employment with H & W Wrecking Company, Paul E. Lindsey sustained injuries in an automobile accident. He and his wife, who alleged consortium loss, later instituted suit. In response, the offending driver's liability carrier paid its policy limits of $15,000 in settlement of all claims against its insured. Since the damages exceeded that amount, plaintiffs then sought recovery under the uninsured/underinsured (UM) provisions of the *1147 employer's liability policies covering the vehicle driven by Lindsey.
On the date of the accident, H & W possessed a Texas Fire and Casualty Insurance Co. (Texas Fire) automobile liability policy, with limits of $500,000 and including a waiver of UM coverage. That insurer had been placed in receivership under Texas laws, however, after being declared insolvent. [Actually, this policy had previously replaced a similar Maryland Casualty Company contract, which also provided a $500,000 liability limitation with a waiver of UM protection attached.]
Additionally, at the time of the mishap, H & W had in effect a Safety Mutual Insurance Company (Safety Mutual) commercial umbrella policy affording liability coverage up to $1,000,000 for damages exceeding the limits of the primary insurance. The Safety Mutual contract, unlike the underlying policy, contained no signed waiver of UM coverage. The employer also owned two additional umbrella policies, neither of which are at issue.
By agreement, plaintiffs and Safety Mutual sought a "partial trial." After receiving a joint stipulation of facts and exhibits, the district court concluded that Safety Mutual provided UM coverage by operation of law, since its policy had attached no express waiver of such protection. The trial judge further determined that the umbrella contract, in dictating $500,000 liability limits for the underlying policy, also required the employer to maintain uninsured motorist coverage in an equal amount. Consequently, as resolved by the lower court, the UM coverage applied only to damages in excess of $500,000.
Plaintiffs now appeal, advancing five assignments of error.

DISCUSSION
The first four assignments of error pertain to interpretation of the insurance agreement. Asserting any ambiguity should be construed in their favor, plaintiffs seek to have the UM coverage of the Safety Mutual policy declared primary or, alternatively, to have it "drop down" to fill the void left by the insolvency of Texas Fire.
An insurance policy is a contract, and those rules established for the construction of written instruments consequently apply. Benton v. Long Mfg. N.C., Inc., 550 So.2d 859 (La.App. 2d Cir.1989); Dean v. Union National Fire Insurance Co., 301 So.2d 925 (La.App. 2d Cir.1974). LSA-C.C. Art. 2045 defines interpretation of a contract as "the determination of the common intent of the parties." Such intent is to be determined in accordance with the plain, ordinary and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis. Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939); Coates v. North-Lake Oil Co., Inc., 499 So.2d 252 (La.App. 1st Cir. 1986), writ denied, 503 So.2d 476 (La.1987). An insurance contract should be given no interpretation which will enlarge or restrict its provisions beyond what its terms reasonably contemplated, or which will lead to an absurd conclusion. Zurich Ins. Co. v. Bouler, 198 So.2d 129 (La.App. 1st Cir. 1967). Absent a conflict with law or public policy, insurers are entitled to limit their liability and impose reasonable conditions upon the obligations assumed in a given policy. Sargent v. La. Health Serv. & Indem. Co., 550 So.2d 843 (La.App. 2d Cir. 1989).
In this case, we are concerned with an umbrella policy, a broad excess legal liability contract utilized to fill gaps in an insured's liability program. In theory, the insured protects himself against catastrophic loss by procuring coverage that begins where his primary policy ends. Thus, umbrella coverage is to be regarded as true excess over and above any type of primary coverage. Coates, supra.
In determining Safety Mutual's exposure under the terms of its contract, we must first review that policy provision setting forth the limits of liability, the "Retained LimitThe Corporation's Limit of Liability" section. The applicable language there provides:

*1148 With respect to personal injury, property damage or advertising injury, or any combination thereof, [Safety Mutual's] liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:
a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the insured; or
b) ....
and then for an amount not exceeding the [$1,000,000] amount specified in Item 1 of the Limits of Liability section of the Declarations arising out of any one occurrence.
Schedule A lists the limits of liability for the underlying automobile liability policy of Maryland Casualty as providing "$500,000 Combined Single Limit for Bodily Injury and/or Property Damage."

Primary UM Coverage
Plaintiffs contend Safety Mutual provided primary UM coverage, arguing that its policy neither specifically excluded, nor required that the underlying insurer maintain, such coverage. Appellants further point to Subpart 3(e) of the Conditions section of the policy, which states:
As this policy is excess insurance, the Insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse [Safety Mutual] for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law.
The language of this provision, however, is not persuasive. Indeed, contrary to plaintiffs' contentions, it clearly indicates that Safety Mutual intended all of its coverage to constitute excess, instead of primary, insurance.
Washam v. Chancellor, 507 So.2d 806 (La.1987), interpreted a similar umbrella contract which, in its attached schedule, provided for underlying insurance with a $500,000 combined single limit for bodily injury and property damage. Noting the statutory requirement [LSA-R.S. 22:1406(D)(1)(a) ] that every automobile liability contract include UM equal to the policy limits unless waived in writing, our Supreme Court found that the umbrella policy required that the underlying policy include uninsured motorist coverage with a $500,000 limit of liability. Likewise, in the present case, Safety Mutual's policy embodied the same requirement.
Furthermore, considering the limits of liability set forth in the present umbrella policy, the abovementioned language of Subpart 3(e) cannot be read to provide UM coverage for amounts within the retained limit.[1] Hence, this policy clearly did not afford primary uninsured motorist protection.

Drop-Down Coverage
Neither does the policy provide, as plaintiffs assert, that coverage will "drop down" to fill in the gap created by the insolvency of the primary carrier. To support their argument, appellants rely on Subpart 6 ("Other Insurance") of the Conditions section, which provides:
If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder), the insurance hereunder shall be in excess of, and not contribute with, such other insurance.
Claiming there exists no other "collectible insurance," save the $15,000 previously advanced, it is contended that the Safety Mutual policy must pay.
Only by isolating the wording, "[i]f other collectible insurance ... is available," and *1149 ignoring the remainder of the provision and the policy as a whole, can the conclusion sought by plaintiffs be reached. Construing the entire provision in its ordinary and natural sense, a "loss also covered hereunder" will only be a loss exceeding the retained limit, and the coverage of the present policy will be excess over "other collectible insurance" covering such a loss. This provision, then, does not control whether or not the coverage "drops down."
Instead, we must look to the previously quoted "Retained LimitThe Corporation's Limit of Liability" provision, which sets forth the liability parameters for this umbrella insurer. See Kelly v. Weil, 563 So.2d 221 (La.1990), where the Louisiana Supreme Court reviewed the language of various excess insurance policies to determine whether they provided drop-down coverage in the event of insolvency of the primary underlying insurance carrier. See also McWright v. Modern Iron Works, Inc., 567 So.2d 707 (La.App. 2d Cir.1990), writ denied, 571 So.2d 651 (La.1990), noting that no ambiguity arises simply because a liability insurance contract refers to "collectible insurance."
Language basically identical to the limit of liability clause [the first policy quotation in this opinion, particularly the references to underlying insurance in subpart (a) ] of the Safety Mutual policy has been interpreted as not requiring that the underlying insurance be collectible, and as not resulting in a drop-down. See Transco Explor. Co. v. Pacific Employers Ins. Co., 869 F.2d 862 (5th Cir.1989), stating:
We conclude that the quoted language admits of only one reasonable interpretation: It plainly contemplates two types of underlying insurance, scheduled and nonscheduled. Each appears in a distinct phrase, as is evidenced by the use of a comma between the words "hereof" and "plus" and by the use of the word "plus" itself. The most natural reading of the language is therefore to read the two phrases separately, with the collectibility requirement being confined to the second phrase. With the policy so construed, only nonscheduled underlying insurance need be collectible to be included in the calculation of the insured's retained limit; the limits of scheduled underlying insurance... is included regardless of whether the insured can actually collect on the policy.
Concurring with the Transco reasoning, we conclude that Safety Mutual did not agree that its coverage would drop down in the event of insolvency of the underlying insurer.
Nor does drop-down coverage result from the failure of the umbrella policy to specifically list the amount of underlying UM insurance. Dupree v. Hill, 530 So.2d 1226 (La.App. 2d Cir.1988). Indeed, such a lowering of the UM threshold does not result even when a reduction of the underlying coverage has occurred before the excess policy issues. Id. See also Washam v. Chancellor, supra; McWright, supra.
Hence, the first four assignments, including arguments that comparison of various policy clauses reflects ambiguity, subjecting the insurer to an unfavorable interpretation, lack merit.

Public Policy Considerations
In their final assignment of error, plaintiffs argue that public policy dictates that the Safety Mutual coverage drop down in order to protect the insured from the insolvency of the underlying carrier. It is asserted that such a result is especially required in this case since Texas Fire, a nonadmitted carrier, is not covered by the Louisiana Insurance Guaranty Association (LIGA). See LSA-R.S. 22:1375, et seq.
It is well settled that the terms of an excess policy determine that insurer's liability in the event of insolvency of a primary carrier. McWright, supra, and authorities there cited. Even a gap in coverage, resulting from the failure of an underlying insurer, does not mandate disregarding the applicable limits of an excess policy. See Robichaux v. Randolph, 555 So.2d 581 (La.App. 1st Cir.1989), affirmed, 563 So.2d 226 (La.1990); Gibson v. Kreihs, 538 So.2d 1057 (La.App. 4th Cir.1989), writ denied, 541 So.2d 856 (La.1989). To ignore the language of such a contract, and in *1150 effect impose a duty upon an excess insurer to guarantee the solvency of a primary carrier, would transform an excess policy into a suretyship agreement.
Having determined that the provisions of Safety Mutual's policy rendered it liable only for the ultimate net loss in excess of the underlying limits, no "drop-down" coverage is available. Compare Robichaux, supra; Coates, supra.
Thus, this assignment also lacks merit.

CONCLUSION
For the foregoing reasons, the judgment is affirmed and all costs assessed to appellants.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, HIGHTOWER and BROWN, JJ.
Rehearing denied.
NOTES
[1] Under Exclusions, Subpart 15, the policy expressly precludes liability under any uninsured or underinsured motorist law. That provision, although invalid under Louisiana jurisprudence, Lee v. USAA Cas. Ins. Co., 540 So.2d 1083 (La. App. 1st Cir.1989), writs denied, 542 So.2d 514, 515 (La.1989), clearly establishes that the parties did not intend for such coverage to be afforded, and certainly not at the level of primary coverage.