660 So.2d 137 (1995)
Dennis Jean GLEASON, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 27297-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*139 McGlinchey, Stafford, Lang by Stephen Rider and Margaret Diamond, New Orleans, Rountree, Cox, Guin & Achee by Billy J. Guin, Jr., Shreveport, for appellants.
Tyler & Johnson by D.G. Tyler, Shreveport, Casten & Pearce by Marshall Pearce, Shreveport, Kitchens, Benton, Kitchens & Warren by Graydon K. Kitchens, III, Minden, Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for appellee.
Before LINDSAY and BROWN, JJ., and PRICE, J. Pro Tem.
LINDSAY, Judge.
The defendant, RLI Insurance Company (RLI), appeals from a trial court judgment granting partial summary judgment in favor of RLI's insured, James W. Colvin. The trial court found that RLI was bound to provide insurance coverage under the terms of an umbrella policy and had a duty to defend Mr. Colvin in an action arising out of an automobile accident. For the following reasons, we reverse the trial court judgment and remand for further proceedings.

FACTS
The plaintiff, Ms. Dennis Jean Gleason, filed suit for damages arising from an auto accident. She alleges that her vehicle was rear ended by a vehicle driven by James M. Colvin, the minor son of the defendant, James W. Colvin. The accident occurred on April 14, 1992. The plaintiff also named as defendants Mr. Colvin's primary automobile liability insurer, State Farm Mutual Auto Insurance Company (State Farm), and his umbrella insurer, RLI.
Mr. Colvin had a primary automobile liability insurance policy with State Farm which provided split limit coverage for bodily injury to one person for $100,000, $300,000 for each occurrence and $50,000 property damage for each occurrence.
Mr. Colvin also had an umbrella policy with RLI for up to $1,000,000 in coverage. The policy required the insured to maintain an underlying insurance policy with either split limit coverage of at least $250,000 each person, $500,000 each occurrence and property damage of $100,000 each occurrence or a combined limit policy of $300,000 for bodily injury and property damage.
On September 22, 1993, State Farm tendered its policy limits of $100,000 into the registry of the court. On November 9, 1993, Mr. Colvin filed a counter claim against RLI, seeking coverage and seeking to require RLI to provide a defense.
On April 7, 1994, Mr. Colvin filed a motion for partial summary judgment against RLI, seeking excess coverage beginning at $100,000 and requiring RLI to provide a defense against the plaintiff's claim. RLI opposed the motion, arguing that Mr. Colvin's split limit policy did not satisfy the primary coverage requirements of the RLI policy.
In opposition to the motion for partial summary judgment, RLI filed the affidavit of Jill Johnson, product director of RLI, regarding interpretation of the policy. Mr. Colvin filed a motion to strike the affidavit on grounds it was immaterial for the motion for partial summary judgment and because it was nothing more than the opinion of the affiant and not properly received on a motion for partial summary judgment.
The motions were heard on July 12, 1994. On September 26, 1994 the trial court signed and filed a judgment granting Mr. Colvin's motion for partial summary judgment. The court ruled that RLI Insurance Company was bound to provide insurance coverage of $1,000,000 in excess of the underlying limits *140 of the State Farm policy and that no gap existed between the primary coverage of the State Farm policy and the coverage provided by RLI.
The court also ruled that RLI must provide a defense for Mr. Colvin from September 22, 1993, the date upon which State Farm tendered its policy limits into the registry of the court, until the case is concluded, including, but not limited to, the litigation of the issue of coverage with RLI.
In addition, the court ordered RLI to pay all costs associated with Mr. Colvin's claims against RLI, including his attorney fees. The court further ordered that the affidavit of Jill Johnson be stricken from the record.
Thereafter, RLI filed a writ application in this court. The application was denied on October 6, 1994, on grounds that RLI could appeal the trial court judgment because it addressed the duty to defend as well as the question of coverage.
RLI then appealed the trial court judgment.

PARTIAL SUMMARY JUDGMENT
RLI argues that the trial court erred in granting Mr. Colvin's motion for partial summary judgment. The trial court granted the motion based upon its finding that the requirements for underlying insurance coverage, set forth in the umbrella policy, were ambiguous and that Mr. Colvin's State Farm split limit policy met those minimum requirements. RLI contends that these findings by the trial court were erroneous. The defendant's argument has merit.
Appellate courts review summary judgments de novo under the same criteria that governs the district court's considerations of the appropriateness of summary judgment. Bosse v. Westinghouse Electric, Inc., 93-1898 (La.App. 4th Cir. 5/17/94), 637 So.2d 1157, writ denied 94-1623 (La. 9/30/94), 642 So.2d 878. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has prayed. The mover is entitled to summary judgment as a matter of law if the pleadings, depositions, answers to interrogatories and admissions on file together with supporting affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966(B).
Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the party opposing the motion. Bosse v. Westinghouse, supra.
In granting partial summary judgment in favor of Mr. Colvin, the court found that the terms of the RLI insurance policy, setting forth the requirements for underlying primary insurance coverage, were ambiguous. The court found that the coverage provided by Mr. Colvin's primary insurer, State Farm, met the requirements of the RLI policy for underlying insurance coverage.
The RLI umbrella policy in this case is a broad excess legal liability contract utilized to fill gaps in an insured's liability program. In theory, the insured protects himself against catastrophic loss by procuring coverage that begins where his primary policy ends. The umbrella policy is to be regarded as a true excess policy over and above any type of primary coverage. Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.1991), writ denied 588 So.2d 100 (La. 1991). A "true excess" or umbrella policy is one which requires, as a condition of coverage, the presence of an underlying primary policy. Southern Baptist Hospital v. Golden Rule Insurance Company, 628 So.2d 142 (La.App. 4th Cir.1993).
Concerning primary insurance coverage, the RLI policy reads as follows:
REQUIRED BASIC POLICIES
It is agreed by you and your Relatives that you will carry an Automobile liability policy and a comprehensive personal liability policy (or homeowner policy) covering both you and your Relatives for at least the minimum limits listed below. If your Relatives are not covered under your policies for at least the minimum limits listed below, *141 they must be covered under another automobile liability policy and another comprehensive personal liability policy (or homeowner policy) for at least the minimum limits below. If you or your Relatives own Recreational Vehicles, Watercraft or have any household employees, you or your Relatives, as the case may be, agree to carry the appropriate policy (or endorsements) listed below covering both you and your Relatives for at least the minimum limits listed below.

Type of Policy Minimum Limit of Coverage
A. Automobile Liability Bodily Injury $250,000 each person
 $500,000 each occurrence
 Property Damage $100,000 each occurrence
 or
 Bodily Injury and Property Damage
 combined $300,000 each occurrence

It is not disputed that Mr. Colvin had a primary automobile liability insurance policy with State Farm. It was a split limit policy providing bodily injury coverage of $100,000 each person or $300,000 per occurrence and providing property damage coverage up to $50,000 per occurrence. Mr. Colvin argues that the RLI policy language, with regard to requirements for primary coverage, was ambiguous. He thought that he could combine the policy limit amounts in this split limit policy in order to achieve the requirement of $300,000 in combined property damage and bodily injury coverage.
RLI contends that the policy clearly sets forth the requirements for primary coverage. This primary coverage requirement may be satisfied by obtaining an underlying policy with either split limit coverage or combined limit coverage, in specified amounts. RLI argues that Mr. Colvin's split limits policy clearly does not meet the requirements for minimum underlying coverage. Further, because Mr. Colvin had a split limit policy in amounts lower than those required by the umbrella policy, RLI contends there is a gap in coverage. Said another way, RLI, in its brief, states that it is not denying coverage to Mr. Colvin. RLI will pay any amounts for which Mr. Colvin may be liable, in excess of $250,000, up to the $1,000,000 limit of the RLI policy. It is RLI's contention that there is a gap in coverage from the $100,000 policy limits tendered into the registry of the court by State Farm and the $250,000 minimum underlying insurance requirements contained in the RLI policy. Simply stated, RLI asserts that there is a $150,000 gap in Mr. Colvin's insurance coverage.
The trial court found that the provisions of the policy were ambiguous and found that Mr. Colvin was not unreasonable in his interpretation of the policy. Therefore, the trial court found that there was no gap in coverage and RLI was bound, under the terms of its policy, to pay any amounts above $100,000 and up to $1,000,000 for which Mr. Colvin is found to be liable as a result of this accident.
An insurance policy is a contract, and those rules established for the construction of written instruments consequently apply. Lindsey v. Poole, supra. LSA-C.C. Art 2045 defines interpretation of a contract as "the determination of the common intent of the parties." Such intent is to be determined in accordance with the plain, ordinary and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis. Lindsey v. Poole, supra. An insurance contract should be given no interpretation which will enlarge or restrict its provisions beyond what its terms reasonably contemplated, or which will lead to an absurd conclusion. Lindsey v. Poole, supra. Absent a conflict with law or public policy, insurers are entitled to limit their liability and impose reasonable conditions upon the obligations assumed in a given policy. Lindsey v. Poole, supra.
Whether an insurance contract is ambiguous is a matter of law. Watts v. Aetna Casualty and Surety Company, 574 So.2d 364 (La.App. 1st Cir.1990). Courts should not strain to find an ambiguity where *142 none exists. Watts v. Aetna Casualty and Surety Company, supra. Ambiguity in an insurance contract must be resolved according to the general rules governing contract interpretation. Breland v. Schilling, 550 So.2d 609 (La.1989). Unless ambiguous, words used in an insurance contract will be given their commonly prevailing meaning. LSA-C.C. Art. 2047. Ambiguous policy provisions are to be construed against the party who furnished its text, in this case, the insurer. LSA-C.C. Art. 2056. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland v. Schilling, supra.
All liability policies contain provisions which limit the financial risk assumed by the insurer. Frequently, automobile policies are written with "split" limits of liability in which the insurer's obligation for bodily injury is limited to a specified amount per person with a maximum amount per accident or occurrence, together with a separate limit for property damage liability coverage. However, some policies, rather than providing "split" limits of coverage, are written with a "single" or combined limit of coverage per accident or occurrence. See S. McKenzie and H. Johnson, Insurance Law and Practice, § 232 in 15 Louisiana Civil Law Treatise (1986), and Watts v. Aetna Casualty and Surety Company, supra.
The issue of ambiguity in the interpretation of requirements for underlying policies was considered in Watts v. Aetna Casualty and Surety Company, supra, a case very similar to the present one. In Watts, the insured had an umbrella policy which required the insured to carry primary coverage in either a split limit policy with minimum primary coverage limits of $250,000 for each person and $500,000 for each occurrence or a combined limit policy with bodily injury and property damage coverage of $300,000 per occurrence. The insured in Watts had primary coverage in a split limit policy with limits of $100,000 per person and $300,000 per occurrence. In Watts, the insured argued, as does Mr. Colvin in the present case, that the umbrella policy was ambiguous, that he had satisfied the primary coverage requirements and that there was no gap in the insurance coverage. The appellate court in Watts disagreed.
In Watts, the court construed the primary coverage requirements of the umbrella policy which are almost identical to those contained in RLI's policy in the present case. In discussing the difference between these two types of liability limits, the court noted that the word "or" indicates the disjunctive. The court found that the language was clear and unambiguous that the primary coverage required is either a split limit policy providing bodily injury liability coverage in a set amount per person, per occurrence and property damage liability coverage in a set amount or a combined (single) limit policy with bodily injury and property damage liability coverage of a set amount per occurrence. The court in Watts held that the trial court committed legal error in holding otherwise. The court stated that Watts' primary coverage was a "split" limit policy and not a combined (single) limit policy. Therefore, Watts did not have the minimum primary coverage required by the policy.
Mr. Colvin contends that the language of the policy in Watts was different from that in the present case and therefore the reasoning of Watts does not apply. Mr. Colvin argues that the policy in Watts required either split limit coverage or "combined single limit coverage." He argues that the RLI policy requires a split limit policy or $300,000 bodily injury and property damage "combined." He asserts that this semantic difference makes the facts and reasoning in Watts distinguishable from the present case. We find that the language of the policies is not significantly different and the reasoning employed in Watts is applicable here.
When the words of the present contract are given their commonly prevailing meaning, the language of the RLI policy clearly and unambiguously required either a split limit policy or a combined limit policy in certain specified amounts as set forth above. Mr. Colvin clearly had a split limit policy in amounts below those required by RLI's umbrella policy. Therefore, the trial court erred in finding that the policy was ambiguous, *143 in finding that the primary policy carried by Mr. Colvin was sufficient to satisfy the underlying policy requirements and in granting partial summary judgment in favor of Mr. Colvin, based upon that finding.[1]

DUTY TO DEFEND
RLI argues that the trial court erred in finding that RLI has a duty to defend Mr. Colvin from September 22, 1993, the date State Farm tendered its policy limits into the registry of the court, until the case is concluded. For the following reasons, we find that the trial court erred in finding that State Farm's duty to defend was discharged by tendering its policy limits into the registry of the court. However, we also find that, at this point in the proceedings, we cannot say that RLI is relieved of a duty to defend the claim of Ms. Gleason against Mr. Colvin as well.
With regard to the duty to defend, the RLI policy provides as follows:
PART IIIWHAT WE WILL DO
2. If you or any person are covered as to an Occurrence, by this policy, but with regard to such Occurrence, Personal Injury or Property Damage is excluded or not covered under the Basic Policies listed in the Declarations:
A. We'll defend you or such person against legal actions or claims seeking payment from you or such person because of Personal Injury or Property Damage. We will do this even if there are no grounds for the action or claim. We will pay the cost of this defense in addition to the Limit of Coverage.
RLI contends that it does not have a duty to defend Mr. Colvin in this case because he had basic insurance with State Farm and that it is State Farm which has the duty to defend.
Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. Steptore v. Masco Construction Company, Inc., 93-2064 (La. 8/18/94), 643 So.2d 1213. The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. American Home Assurance Company v. Czarniecki, 230 So.2d 253 (La.1969).
In reasons for judgment, the trial court stated it recognized that State Farm had a primary duty to defend this suit, but it exhausted its policy limits in September, 1993 when it deposited the policy limits into the registry of the court. The trial court found that after the policy limits were deposited with the court, State Farm no longer had a duty to defend Mr. Colvin and the duty passed to RLI.
In Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988) the court held that when a liability insurer exhausted its policy limits through a good faith settlement, it was no longer obligated to defend the insured in a separate action based on the same accident. However, the court went on to state that its finding was distinguishable from numerous cases which hold that the insurer cannot discharge its defense duties by unilaterally tendering its policy limits to the court, claimant, or the insured. The court further stated that when an insurer merely tenders its policy limits without obtaining a settlement of any claim for its insured, a strong argument can be made that it has neither "exhausted" its policy limits nor fulfilled its fiduciary duty to discharge its policy obligations to the insured in good faith.
Therefore, we conclude that, even though State Farm tendered its policy limits into the registry of the court on September 22, 1993, this did not relieve it of its obligation to provide a defense to Mr. Colvin. As primary insurer of Mr. Colvin, State Farm has a duty to defend him on this claim.
*144 However, we find that RLI may owe some duty to defend Mr. Colvin as well. As outlined above, RLI is obligated to provide coverage, under the terms of its policy to Mr. Colvin for any amounts for which he is found liable, above $250,000 and up to $1,000,000. The petition filed by Ms. Gleason does not set forth the amount of monetary damages sought and there is no way at this juncture in the proceedings to determine whether her claim will exceed $250,000 and thus be covered by the RLI policy. Therefore, it cannot be said that the petition of the plaintiff unambiguously excludes coverage by RLI. While State Farm has the primary duty to defend, if a claim is within the limits of the excess insurance, there is also a duty by the excess insurer to defend. American Home Assurance Company v. Czarniecki, supra; Hobbs v. Fireman's Fund American Insurance Companies, 339 So.2d 28 (La.App. 3d Cir.1976), writ denied 341 So.2d 896 (La. 1977); S. McKenzie and H. Johnson, Insurance Law and Practice, § 214 in 15 Louisiana Civil Law Treatise (1986). See also Petrol Industries, Inc. v. Gearhart-Owen Industries, Inc., 424 So.2d 1059 (La.App. 2d Cir. 1982) and Federal Insurance Company v. St. Paul Fire and Marine Insurance Company, 93-1099 (La.App. 1st Cir. 6/24/94), 638 So.2d 1132.
Accordingly, we find that the trial court erred in ruling that the sole duty to defend Mr. Colvin in this case rested with RLI. As stated above, State Farm has the primary duty to defend Mr. Colvin and RLI has a duty to defend any part of the claim which is covered under its umbrella policy.

ATTORNEY FEES AND COSTS
RLI argues that the trial court erred in ordering it to pay all attorney fees and costs incurred by Mr. Colvin in litigating the issue of coverage by RLI. We agree.
The insurance contract in the present case did not impose a duty upon the insurer to pay any attorney fees in connection with the insured's pursuit of the coverage issue. Generally, if the insured hires an attorney to represent him in coverage disputes, he will have to bear those costs himself. Steptore v. Masco Construction Company, Inc., 93-2064 (La. 8/18/94), 643 So.2d 1213; Dugas Pest Control of Baton Rouge, Inc. v. Mutual Fire, Marine and Inland Insurance Company, 504 So.2d 1051 (La. App. 1st Cir.1987); Clarke v. Fulkerson, 378 So.2d 561 (La.App. 3d Cir.1979); Breitenbach v. Green, 186 So.2d 712 (La.App. 4th Cir.1966); Hobbs v. Fireman's Fund American Insurance Companies, supra.
In the present case, the sole issues before the court for consideration in this motion for partial summary judgment were the issue of coverage and consequently RLI's duty to defend Mr. Colvin arising from that coverage. Mr. Colvin retained separate counsel concerned solely with the issue of RLI's coverage. Under these circumstances, the trial court erred in ordering RLI to pay Mr. Colvin's attorney fees.

CONCLUSION
For the reasons stated above, we reverse the trial court judgment granting partial summary judgment in favor of James W. Colvin and against RLI. The trial court erred in finding that Mr. Colvin carried the minimum required underlying automobile liability insurance coverage and therefore that there was no gap in his insurance coverage. Mr. Colvin did not have the requisite underlying insurance coverage. Under the terms of the RLI policy, coverage under the umbrella policy begins at $250,000. Further, although RLI has a duty to defend should the plaintiff's claim for damages exceed 250,000, State Farm is not released from its duty to provide the primary defense in this suit. Further, Mr. Colvin is not entitled to attorney fees and cost associated with the litigation concerning the issue of coverage. Costs in this court and in the court below are assessed to James W. Colvin.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Because we find that, based simply upon a reading of the RLI insurance policy and applicable jurisprudence, the trial court erred in granting partial summary judgment in this case, it is unnecessary to consider the issue of whether the trial court erred in striking from the record the affidavit of Jill Johnson, product director of RLI, which was submitted in connection with the motion for partial summary judgment.