KUHN, J.
 

 | .¿Plaintiff-appellant, Monica Anderson, appeals the trial court’s grant of summary judgment, dismissing her claims based on its conclusion that Donald Anderson, an employee of LFI Ft. Pierre, Inc., d/b/a Labor Finders (Labor Finders), was not an insured under a liability policy issued to Labor Finders by defendant-appellee, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union). We affirm.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 Anderson’s father, Donald Anderson, was killed in a car accident when an oncoming motorist, Gordon Pugh, Jr., crossed the center line and struck the car Donald Anderson was driving. At the time of his death, Donald Anderson was within the course and scope of his employment with Labor Finders. Labor Finders had a liability insurance policy issued by National Union that was in effect at the time of the accident.
 

 Anderson filed this survival and wrongful death action on March 24, 2006, naming Pugh and his insurer as defendants. She subsequently amended her petition on December 5, 2007, to add National Union as a defendant, alleging that her father was an insured under the liability insurance policy issued to Labor Finders and, therefore, that he was entitled to coverage by statutorily-required uninsured/underinsured motorist (UM) insurance. National Union answered the suit, generally denying her allegations. Anderson settled with Pugh’s insurer in March 2008. National Union subsequently filed a motion for summary judgment, and Anderson filed a cross motion on the coverage issue. The trial court concluded that the policy was clear, unambiguous, and that under its terms Donald | ¡Anderson was not an insured to whom it
 
 *1143
 
 afforded coverage. Thus, the trial court granted summary judgment in favor of National Union, denied Anderson’s motion, and dismissed her claims. Anderson appealed.
 

 DISCUSSION
 

 Summary judgments are reviewed on appeal
 
 de novo,
 
 with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate.
 
 Smith v. Our Lady of the Lake Hospital, Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact.
 
 Jarrell v. Carter,
 
 632 So.2d 321, 323 (La.App. 1st Cir.1993),
 
 writ denied,
 
 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2);
 
 Rambo v. Walker,
 
 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
 

 When the issue before the court .on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. La. C.C.P. art. 966(C)(2);
 
 Buck’s Run Enterprises, Inc. v. Mapp Const., Inc.,
 
 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. However, on issues for which the moving party will not bear the burden of proof |4at trial, the moving party’s burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2);
 
 Clark v. Favalora,
 
 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673. The summary judgment being appealed in this case was submitted by the defendant who would not bear the burden of proof on the issue of coverage at trial. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case.
 
 Guardia v. Lakeview Regional Medical Ctr.,
 
 2008-1369 (La.App. 1st Cir.5/8/09), 13 So.3d 625, 628.
 

 Insurance policies are subject to the general rules of contract interpretation in Louisiana.
 
 Reynolds v. Select Props., Ltd.,
 
 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. The court is to interpret the parties’ intent in forming the contract.
 
 See Huggins v. Gerry Lane Enterprises, Inc.,
 
 06-2816 (La.5/22/07), 957 So.2d 127, 129. In ascertaining the common intent of the insured and insurer, courts begin their analysis with a review of the words in the insurance contract. Words in an insurance contract must be ascribed their generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.
 
 See
 
 La. C.C. art. 2047;
 
 Succession of Fannaly v. Lafayette Ins. Co.,
 
 01-1355 (La.1/15/02), 805 So.2d 1134, 1137. Moreover, an insurance contract is construed as a whole and each provision in the contract must 15be interpreted in light
 
 *1144
 
 of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions.
 
 See
 
 La. C.C. art. 2050;
 
 Peterson v. Schimek,
 
 98-1712 (La.3/02/99), 729 So.2d 1024, 1029. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written.
 
 See
 
 La. C.C. art. 2046. Insurance policies are meant to effect coverage and therefore the contract is additionally interpreted to effect coverage where possible.
 
 See Yount v. Malsano,
 
 627 So.2d 148, 151 (La.1993). However, if an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision is construed against the insurer who furnished the contract’s text and in favor of the insured.
 
 See
 
 La. C.C. art. 2056.
 

 All liability insurance policies issued in the state of Louisiana are required to offer UM coverage in an amount equal to their liability coverage absent an express waiver or reduction in UM coverage. La. R.S. 22:1295.
 
 [1]
 
 Qualification for UM coverage in Louisiana attaches to the person of the insured and only requires that an insured person be injured by a UM.
 
 Howell v. Balboa Ins. Co.,
 
 564 So.2d 298, 301-02 (La.1990). The test to determine whether a person qualifies for UM coverage under a liability insurance policy is to ask whether they would be covered if they were at fault for the accident.
 
 See Succession of Fannaly,
 
 805 So.2d at 1140.
 

 In support of its motion for summary judgment, National Union offered into evidence the original policy, the relevant endorsement, and an affidavit of a Labor | (jFinders vice president. In her cross motion, Anderson relied on the same documents.
 

 National Union does not dispute that its insurance policy is required to provide UM coverage to those insured under its policy as required by La. R.S. 22:1295. Thus, we examine the evidence to ascertain whether Donald Anderson was an insured under the original terms of the National Union policy.
 

 Section VIII defines “Who is an Insured” under the original policy, stating in relevant part:
 

 a. [Labor Finders’] employees other than [Labor Finders] executive officers but only for acts within the scope of their employment by [Labor Finders] or while performing duties related to the conduct of [Labor Finders].[
 
 2
 
 ]
 

 It is undisputed that Donald Anderson was both an employee of Labor Finders and that he was within the scope of his employment at the time of the accident. Therefore, under the plain language of the contract, Donald Anderson was an insured under the National Union policy, unless an exclusion applies.
 

 Insurers have the right to limit coverage in any manner desired, so long as the limitations are clearly and unambiguously set forth in the contract and are not in conflict with statutory provisions or public policy.
 
 Campbell v. Market American Ins. Co.
 
 00-1448 (La.App. 1st Cir. 9/21/01), 822 So.2d 617, 623-24,
 
 writ denied,
 
 01-2813 (La.1/4/02), 805 So.2d 204. Coverage exclusions in insurance contracts are construed strictly against the insurer.
 
 See State Farm Mut. Auto. Ins. Co. v.
 
 
 *1145
 

 Noyes,
 
 02-1876 (La.App. 1st Cir.2/23/04), 872 So.2d 1133, 1136. However, if the wording of the policy is clear and expresses the parties’ intent, the policy must be enforced as written. This rule is applicable even to policy provisions that limit the insurer’s liability or place restrictions on policy obligations, unless the provision conflicts with statutes or public policy.
 
 Pareti v. Sentry Indent. Co.,
 
 536 So.2d 417, 420-21 (La.1988).
 

 The original policy exclusions to Coverage B are listed in Section IV of the original policy. Exclusion H states:
 

 [NATIONAL UNION] SHALL NOT DEFEND OR PAY FOR ANY CLAIMS FOR ... COVERAGE B, BODILY INJURY OR PROPERTY DAMAGE, ARISING OUT OF ...
 

 Aircraft, Auto or Watercraft
 

 Bodily injury or property damage or wrongful acts arising out of the ownership, maintenance, use ... of any ... auto ... owned or operated by ... any Insured.
 

 Thus, under the original policy, although Donald Anderson was an insured, the policy exclusion afforded him no coverage because his bodily injury arose out of his use of an auto.
 

 Anderson contends, however, that her father was covered under one of the endorsements to Labor Finders’ insurance policy. Labor Finders’ insurance policy is subject to multiple endorsements. One endorsement, Endorsement 3, deleted Exclusion H and added limited automobile coverage for “Hired Auto and Non-Owned Auto Liability” to the policy. Anderson asserts that the non-owned auto liability coverage added in Endorsement 3 offers coverage to her father for the car wreck.
 
 [3]
 

 ^Insurance endorsements are a part of the policy and are construed using the same rules as the original policy.
 
 See
 
 La. R.S. 22:881. To be valid, endorsements must be in writing and physically attached to the policy.
 
 See
 
 La. R.S. 22:867. The record establishes that these two requirements are satisfied here.
 

 Section 1 of Endorsement 3 states:
 

 B. Non-Owed Auto Liability
 

 This insurance provided under Coverage B, Bodily Injury and Property Damage applies to Bodily Injury or Property Damage arising out of the use of a Non-Owned Auto by any person other than [Labor Finders] in the course of your business as a Staffing Service.
 

 Under the section entitled “DEFINITIONS,” Endorsement 3 in pertinent part further provides:
 

 B. For purposes of this endorsement only, Section VIII, Who is an Insured is amended to include:
 

 “Insured” means ...
 

 3) with respect to Non-Owned Auto, any partner or officer of [Labor Finders], but only while such Non-Owned Auto is being used in [Labor Finders’] business as a Staffing Service ....
 

 D. “Non-Owned Auto” means any Auto [Labor Finders does] not own, lease, hire[,] rent or borrow which is used in connection with [Labor Finders’] business as a Staffing Service. This includes Autos owned by [Labor Finders] Employees, [Labor Finders] partners or [Labor Finders] officers, or members of their household, but while used on [Labor Finders’] business as a Staffing Service.
 

 
 *1146
 
 Applying the definition of “non-owned auto” provided for in Endorsement 3, Donald Anderson’s car, which was not owned by Labor Finders, was clearly a non-owned auto. But the affidavit of Labor Finders’ vice president and risk 19manager, Gary L. Struder, indicates Donald Anderson was neither a partner nor an officer of Labor Finders.
 

 The Louisiana Supreme Court considered a non-owned auto provision functionally identical to the one in the present case in
 
 Succession of Fannaly,
 
 805 So.2d at 1138. In
 
 Succession of Fannaly,
 
 the court held that four independent contractors were not able to recover under a non-owned auto endorsement that, like Endorsement 3, only covered partners and executive officers.
 
 Id.
 
 at 1140-41. The court reasoned that the four contractors were not partners or executive officers and therefore not insureds.
 
 Id.
 
 at 1139-40.
 

 Anderson asserts that the holding in
 
 Succession of Fannaly
 
 is inapplicable because the endorsement in that case expressly stated that it “replaced” the section defining who is an insured in the original policy. But we find nothing in the
 
 Succession of Fannaly
 
 court’s opinion that sets forth any language expressly replacing the original section that defined who is an insured.
 
 See Succession of Fannaly,
 
 805 So.2d at 1138.
 

 Based on
 
 Succession of Fan-naly,
 
 the language of Endorsement 3 is clear, unambiguous, and enforceable. Therefore, Endorsement 3 is to be applied as written.
 
 [4]
 

 See
 
 La. C.C. art. 2046. Since Donald Anderson was not a partner or officer of Labor Finders, he is not an insured under this endorsement.
 
 See Succession of Fannaly,
 
 at 1139.
 

 Relying on
 
 Home Ins. Co. v. Doe,
 
 321 So.2d 24, 28 (La.App. 3d Cir.975),1ft Anderson contends that the language of Endorsement 3 must be read to expand coverage in light of its use of the words “amended to include.” As such, she avers that Endorsement 3 expands who is an insured and, therefore, reading Section VIII of the original policy, Donald Anderson was an insured.
 

 Unlike the language examined by the
 
 Doe
 
 court, Endorsement 3 expressly defines “Who is an Insured” “[f]or purposes of this endorsement only.” Clearly, this restrictive language indicates the intentions of the contracting parties to draw a narrow universe of insureds for the purpose of the limited automobile coverage provided by Endorsement 3. Endorsement 3 deletes Exclusion H of the original policy but only with respect to the coverage expressly granted by the terms set forth in the endorsement. The endorsement’s definition of “Who is an Insured” is obviously a self-contained universe of insureds meant to define who is covered by the insurance granted therein. To interpret Endorsement 3 as an expansion in coverage, as urged by Anderson, would contradict both the plain language of the policy,
 
 see
 
 La. C.C. art. 2046, and the intent of the parties in confecting the contract.
 
 [5]
 

 See
 
 
 *1147
 

 Campbell,
 
 822 So.2d at 628-24;
 
 cf. McWright v. Modern Ir
 
 on
 
 Works, Inc.,
 
 567 So.2cl 707, 711 (La.App. 2d Cir.),
 
 writ denied,
 
 571 So.2d 651 (La.1990) (where the policy and an attachment to policy conflict, the latter controls).
 

 Accordingly, the trial court correctly concluded that Donald Anderson was not an insured under the non-owned auto provisions of Endorsement 3 of the policy. Because he was not an insured, he was not eligible for liability coverage under the National Union policy, and Anderson has no claim for UM coverage under such policy.
 

 DECREE
 

 For these reasons, the trial court’s judgment, granting summary judgment in favor of defendant-appellee, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, is affirmed. Plaintiff-appellant, Monica Anderson, is assessed with all costs of this appeal.
 

 AFFIRMED.
 

 [1]
 

 . La. R.S. 22:680 was in effect at the time of the accident. It was re-designated as La. R.S. 22:1295 by 2008 La. Acts, No. 415, § 1, effective January 1, 2009.
 

 [2]
 

 .
 
 Although this section contains additional limitations, neither side contends, and nothing in the record supports a finding, that they are relevant to this case.
 

 [3]
 

 . Anderson does not contend, and nothing in the record supports a finding, that the hired auto provision of Endorsement 3 is applicable to her father.
 

 [4]
 

 . Any conflict that does arise between Endorsement 3 and the original policy is resolved in favor of the endorsement.
 
 See also McWright v. Modern Iron Works, Inc., 567
 
 So.2d 707, 711 (La.App. 2d Cir.),
 
 writ denied,
 
 571 So.2d 651 (La.1990) (where the policy and an attachment to the policy conflict, the latter controls).
 

 [5]
 

 . We find further support in the layout of the endorsement provisions themselves for our determination that the endorsement's definition of "Who is an Insured” was not intended by the parties to expand non-owned auto coverage to employees who were not also a partner or officer of Labor Finders. Endorsement 3 places the modification of “Who is an Insured” in a section entitled "DEFINITIONS.” Nothing in the endorsement pur
 
 *1147
 
 ports to place the statement of "Who is an Insured,” which modifies the scope of coverage insofar as Endorsement 3, within Section VIII, which would correspond to its placement in the original policy. (Indeed, Endorsement 3 does not contain a Section VIII.) This contrasts with the modification of the exclusions section contained in Endorsement 3. Although neither party contends the exclusions of Endorsement 3 are applicable to the facts of this case, we find it noteworthy that the exclusions set forth in Endorsement 3 are a continuation of the sequence of lettering contained in Section IV of the original policy. Section IV of Endorsement 3, entitled "EXCLUSIONS,” states the listed exclusions are "added to” Section IV of the original policy. The list of exclusions set forth in Endorsement 3 designates the first exclusion in Endorsement 3 as "T,” which corresponds to the last exclusion in the original policy designated “S.” Thus, had the parties intended to expand the statement of "Who is an Insured” so as to include those listed in the "DEFINITIONS” section of Endorsement 3 as well as those set forth in Section VIII of the original policy, the language of the endorsement could have continued with the listed categories set forth in Section VIII of the original policy as was done with the exclusions. Because it did not do this, we believe the distinction supports our more restrictive interpretation of the parties’ intent insofar as the non-owned auto liability coverage set forth in Endorsement 3.