WELCH, J.
The plaintiff/appellant, Adam O'Bannon, appeals a summary judgment from the Louisiana Office of Workers' Compensation ("OWC") in favor of the defendant/appellee, Texas Mutual Insurance Company ("TMIC"), the workers' compensation insurer of his employer, Moriah Technologies, Inc. ("Moriah"), dismissing *396 TMIC, with prejudice. For the reasons that follow, we reverse in part and affirm in all other respects.
FACTS AND PROCEDURAL HISTORY
The facts of this case are not in dispute. O'Bannon, a Louisiana resident, was injured in Louisiana in June 2012, while in the course and scope of his employment with Moriah, a Texas corporation. TMIC provided a policy of workers' compensation insurance to Moriah. O'Bannon filed a disputed claim for compensation with the OWC in Louisiana against Moriah and TMIC in October 2012. Moriah filed a cross-claim against TMIC, seeking reimbursement for attorney fees and costs incurred in the defense of the matter, as well as reimbursement of any benefits paid to O'Bannon.
Following trial, the workers' compensation judge ("WCJ") signed a judgment on January 13, 2015, holding that O'Bannon was an employee of Moriah who sustained an injury during the course and scope of his employment with Moriah, and further, that the accident and injury sustained were "traditional" workers' compensation accidents and injuries as defined by the Louisiana Workers' Compensation Act ("LWCA"), La. R.S. 23:1021 et seq. The WCJ cast Moriah in judgment for indemnity, medical benefits and expenses, penalties, attorney fees, and costs of the proceeding for Moriah's failure to timely pay indemnity and medical benefits pursuant to La. R.S. 23:1201(B) and 23:1201(E). Additionally, the WCJ held that it did not have subject matter jurisdiction over Moriah's cross-claim against TMIC for reimbursement of workers' compensation benefits and dismissed Moriah's claim against TMIC, with prejudice. Finally, the WCJ dismissed O'Bannon's claim against TMIC, with prejudice.[1]
Moriah appealed the judgment of the WCJ. In O'Bannon v. Moriah Techs., Inc. , 2015-1460 (La. App. 1st Cir. 6/3/16), 196 So.3d 127, this court affirmed the WCJ's ruling that O'Bannon was an employee of Moriah and that he sustained injury as a result of an accident that occurred during the course and scope of his employment with Moriah. 196 So.3d at 137, 140. This court affirmed the WCJ's award of indemnity, medical benefits and expenses, penalties, attorney fees, and costs to O'Bannon. Id. at 142. Regarding the OWC's jurisdiction over the claims asserted against TMIC, this court held that the OWC had exclusive subject matter jurisdiction over the claims asserted by O'Bannon and Moriah against TMIC, even though the insurance policy at issue might require the application of Texas law to determine coverage. We accordingly vacated the portions of the WCJ's judgment and supplemental and amending judgment that held the OWC did not have jurisdiction over the claims asserted against TMIC by O'Bannon and Moriah and remanded the matter to the OWC for further proceedings consistent with our opinion.[2] Id. at 141-42.
Upon remand, TMIC filed a motion for summary judgment arguing that its policy *397 of workers' compensation insurance issued to Moriah does not provide coverage in favor of O'Bannon and Moriah and further, that Moriah does not qualify for reimbursement under the policy. O'Bannon and Moriah opposed TMIC's motion for summary judgment. Following a hearing held on December 7, 2016, the WCJ granted summary judgment in favor of TMIC and signed a judgment on January 20, 2017 that: 1) held that TMIC's policy does not provide coverage to Moriah for O'Bannon's workplace accident; 2) gave full faith and credit to a Texas judgment-rendered in favor of TMIC granting a motion for summary judgment and a petition for declaratory judgment-which held that TMIC had no duty to defend, indemnify, or reimburse Moriah in the instant suit; and, 3) dismissed TMIC from the instant suit, with prejudice. The WCJ certified the partial summary judgment as final pursuant to La. C.C.P. art. 1915(B) and issued written reasons for judgment. O'Bannon now appeals the January 20, 2017 judgment, arguing the WCJ erred in concluding that no workers' compensation coverage existed in his or Moriah's favor under TMIC's policy of workers' compensation insurance and that the WCJ erred in granting summary judgment in favor of TMIC, dismissing the insurer from the suit, with prejudice.
TMIC'S MOTION TO SUPPLEMENT THE RECORD
While the prior appeal was pending, TMIC obtained a judgment from the 261st Judicial District Court ("JDC") of Travis County, Texas in Texas Mutual Insurance Company v. Moriah Technologies, Inc., cause no. D-1-GN-14-000479. The judgment, signed January 5, 2016, granted summary judgment and declaratory judgment in favor of TMIC and 1) held that TMIC had no duty to defend, indemnify, or reimburse Moriah regarding O'Bannon's claims for workers' compensation benefits in the OWC in Louisiana; and, 2) dismissed Moriah's counterclaims for breach of contract, bad faith, and late payment of claims in the Texas suit. This is the Texas judgment referred to in the WCJ's January 20, 2017 judgment granting summary judgment in favor of TMIC.
Thereafter, TMIC petitioned the 14th JDC in Calcasieu Parish, Louisiana to recognize the January 5, 2016 Texas judgment and make it executory in the State of Louisiana. In an order signed June 13, 2017, the trial court ordered that the Texas judgment be registered, recognized, enforced, and made executory in the State of Louisiana in accordance with the Louisiana Enforcement of Foreign Judgments Act ("LEFJA"). See La.R.S. 13:4241 -4248.
TMIC filed the instant unopposed motion to supplement the appellate record with copies of the January 5, 2016 Texas judgment and the June 13, 2017 judgment of the 14th JDC. This court entered an interim order referring TMIC's motion to supplement the appellate record to the panel to which the appeal is assigned.
As an appellate court, we have no jurisdiction to review evidence that is not in the record on appeal, and we cannot receive new evidence. Niemann v. Crosby Dev. Co. , 2011-1337 (La. App. 1st Cir. 5/3/12), 92 So.3d 1039, 1044. An appellate court must render its judgment upon the record on appeal, i.e. , that which is sent by the lower court to the appellate court and includes the pleadings, court minutes, transcripts, jury instructions (if applicable), judgments, and other rulings, unless otherwise designated. See La. C.C.P. arts. 2164 and 2127 - 2128. The OWC has jurisdiction to correct an omission from the trial record on appeal. An appellate court can neither supplement the record nor consider documents on appeal which were not introduced or filed into the record *398 during the proceedings below. See La. C.C.P. arts. 2088(4) and 2132 ; see also Strawn v. Superfresh , 98-1624 (La. App. 1st Cir. 9/24/99), 757 So.2d 686, 688 n.2.
The January 5, 2016 Texas judgment is already a part of the record on appeal. The Texas judgment was filed by TMIC in support of its motion for summary judgment and was properly authenticated by an affidavit. See Comments-2015, cmt. (c) to La. C.C.P. art. 966. To the extent TMIC seeks to supplement the appellate record with the Texas judgment, we deny the request as moot.
The June 13, 2017 judgment of the 14th JDC is not a part of the record on appeal; further, there is no evidence that judgment was presented to the OWC or filed into the record in the proceedings below.[3] See Strawn, 757 So.2d at 688 n.2. Accordingly, TMIC's motion to supplement the appellate record with the June 13, 2017 judgment of the 14th JDC is denied. Since it lies outside the appellate record, that judgment will not be considered by this court.
APPELLATE JURISDICTION
Appellate courts have a duty to examine subject matter jurisdiction sua sponte , even when the parties do not raise the issue. Texas Gas Exploration Corp. v. Lafourche Realty Co., Inc. , 2011-0520 (La. App. 1st Cir. 11/9/11), 79 So.3d 1054, 1059, writ denied, 2012-0360 (La. 4/9/12), 85 So.3d 698. As an appellate court, we are obligated to recognize any lack of jurisdiction if it exists. This court's appellate jurisdiction extends to "final judgments," which are those that determine the merits in whole or in part. La. C.C.P. arts. 1841 and 2083 ; Van ex rel. White v. Davis , 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So.2d 478, 483. However, a judgment that only partially determines the merits of an action is a partial final judgment and, as such, is immediately appealable only if authorized by La. C.C.P. art. 1915. Rhodes v. Lewis , 2001-1989 (La. 5/14/02), 817 So.2d 64, 66.
Subpart A of Article 1915 designates certain categories of partial judgments as final judgments subject to immediate appeal without the necessity of any designation of finality by the trial court, while Subpart B of Article 1915 provides that when a court renders a partial judgment, partial motion for summary judgment, or exception in part, it may designate the judgment as final when there is no just reason for delay. Article 1915, in pertinent part, provides:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary *399 judgment granted pursuant to Article 966(E).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
(6) Imposes sanctions or disciplinary action pursuant to Article 191, 863, or 864 or Code of Evidence Article 510(G).
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
The January 20, 2017 judgment at issue herein, which grants summary judgment in favor of TMIC, falls within the first category identified in Subpart A of Article 1915 because the judgment dismisses TMIC from the suit, with prejudice. Under Article 1915(A)(1), the judgment is final for purposes of an immediate appeal, without the need for a designation of finality. For this reason, our jurisdiction extends to this appeal. Accordingly, the WCJ's Article 1915(B)(1) certification was unnecessary since the judgment was final pursuant to Article 1915(A)(1).
APPLICABLE LAW
TMIC moved for summary judgment on the basis that its policy of workers' compensation insurance issued to Moriah does not provide coverage in favor of O'Bannon or Moriah; that TMIC has no duty to defend, indemnify, or reimburse Moriah for the claims of O'Bannon pursuant to the policy; and, that Moriah does not qualify for reimbursement under the policy. The determination of motions for summary judgment in workers' compensation cases is subject to the same standards utilized in ordinary civil actions. Lilly v. Allied Health Care , 2007-0590 (La. App. 1st Cir. 6/6/08), 991 So.2d 1096, 1098, writ denied, 2008-2081 (La. 12/12/08), 996 So.2d 1117. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the OWC's determination of whether summary judgment is appropriate. See Lowe v. Noble, L.L.C. , 2016-1110 (La. App. 1st Cir. 10/17/17), 233 So.3d 28, 35, writ granted, decision rev'd, 2017-1948 (La. 2/9/18), 235 So.3d 1095.
*400 The burden of proof on the motion for summary judgment rests with the mover, TMIC. See La. C.C.P. art. 966(D)(1). A summary judgment may be rendered on the issue of insurance coverage alone. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage. Perkins v. Entergy Corp ., 2009-0632 (La. App. 1st Cir. 6/10/10), 2010 WL 2332357, at **2-3 (unpublished opinion).
An insurance policy, like the workers' compensation insurance policy at issue here, is a contract between the parties and is interpreted according to ordinary contract principles. See Sims v. Mulhearn Funeral Home, Inc. , 2007-0054 (La. 5/22/07), 956 So.2d 583, 589. The court is to interpret the parties' intent in forming the contract. In ascertaining the common intent of the insured and insurer, courts begin their analysis by examining the words of the insurance contract. Anderson v. State Farm Fire & Cas. Ins. Co. , 2010-0036 (La. App. 1st Cir. 7/16/10), 42 So.3d 1140, 1143. In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. La. C.C. art. 2047 ; see also Sims , 956 So.2d at 589. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. La. C.C. art. 2046 ; see also Sims , 956 So.2d at 589 ; Magnon v. Collins , 98-2822 (La. 7/7/99), 739 So.2d 191, 197. Moreover, an insurance contract is construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. See La. C.C. art. 2050 ; see also Anderson , 42 So.3d at 1143-44.
Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions on the obligations they contractually assume. Marcus v. Hanover Ins. Co. , 98-2040 (La. 6/4/99), 740 So.2d 603, 606. Insurance policies are meant to effect coverage, and therefore, the contract is additionally interpreted to effect coverage where possible. However, if an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision is construed against the insurer who furnished the contract's text and in favor of the insured. See La. C.C. art. 2056 ; see also Anderson , 42 So.3d at 1144. Exclusions must be clearly stated. See La. C.C. art. 2057 ; see also La. Maint. Servs. Inc. v. Certain Underwriters at Lloyd's of London , 616 So.2d 1250 (La. 1993). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. However, subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Perkins , 2010 WL 2332357, at *3.
In the January 20, 2017 judgment currently on appeal, the WCJ granted summary judgment in favor of TMIC that its policy issued to Moriah does not provide coverage to Moriah for O'Bannon's accident, nor does the policy provide coverage directly to O'Bannon for workers' compensation benefits under the LWCA. The *401 judgment further "recognize[ed] and [gave] full faith and credit" to the January 5, 2016 judgment of the 261st JDC of Travis County, Texas in Texas Mutual Insurance Company v. Moriah Technologies, Inc., cause no. D-1-GN-14-000479. In the January 5, 2016 Texas judgment, the district court granted a petition for declaratory judgment and a motion for summary judgment filed by TMIC in the 261st JDC. In the petition for declaratory judgment, TMIC sought a declaration from the Texas court that under its workers' compensation insurance policy issued to Moriah, TMIC has no duty to defend, indemnify, or reimburse Moriah from O'Bannon's claim for Louisiana workers' compensation benefits. In the motion for summary judgment, TMIC sought judgment in its favor on its claim for declaratory relief and the dismissal of Moriah's counterclaims for breach of contract, bad faith, and late payment of claims.
Louisiana courts are required to give full faith and credit to judgments of courts of its sister states. U.S. Const. art. 4, § 1. A state may deny full faith and credit to a judgment rendered by a court of another state when it is shown that the court rendering the judgment lacked jurisdiction over the parties or the subject matter or that the judgment was obtained through extrinsic fraud. Summers v. Pray , 2002-1840 (La. App. 1st Cir. 6/27/03), 850 So.2d 46, 50, writ denied, 2003-2593 (La. 12/12/03), 860 So.2d 1155. As set forth in our prior opinion, the OWC in Louisiana has exclusive jurisdiction over all claims or disputes arising under the LWCA, including but not limited to workers' compensation insurance coverage disputes. La. R.S. 23:1310.3(F) ; O'Bannon , 196 So.3d at 140-41. Thus, the WCJ was not required to give full, faith, and credit to the January 5, 2016 Texas judgment since the OWC in Louisiana has exclusive jurisdiction over the parties' insurance coverage dispute brought under the LWCA, not the 261st JDC of Travis County, Texas. See Id. We therefore reverse that portion of the WCJ's January 20, 2017 judgment.
DISCUSSION
The workers' compensation insurance policy in this case was issued to Moriah, a Texas corporation, by TMIC, the insurer of last resort for Texas employers who are unable to obtain workers' compensation insurance through the voluntary insurance market. TMIC argues that it was created by the Texas State Legislature to provide workers' compensation insurance coverage exclusively for Texas employers and is statutorily limited to providing workers' compensation insurance coverage in Texas for Texas employees.[4]
TMIC asserts that its policy with Moriah does not provide other states' insurance, but rather includes a limited reimbursement endorsement for Texas employees who are injured in other jurisdictions. TMIC claimed that the endorsement specifically provided for the reimbursement of certain claims payments Moriah may be ordered to pay in another state, to a person who qualified for benefits in that other state, and who is a Texas employee.
In support of its motion for summary judgment, TMIC filed the workers' compensation insurance policy it issued to *402 Moriah.[5] The policy, a workers' compensation/employer's liability ("WC/EL") policy, No. TSF-0001151113 20111115, was issued on November 21, 2011, with a stated policy period of November 15, 2011 to November 15, 2012. Part One of the policy covers workers' compensation insurance, the sums the "insured" became legally obligated to pay as "benefits" required by the workers' compensation law because of "bodily injury" caused by an "accident" or "disease." Part Two of the policy covers employers' liability insurance, the sums the "insured" became legally obligated to pay as "damages" because of "bodily injury" caused by an "accident" or "disease." The definition of "insured" under the terms of the policy includes the employer named in Item 1 of the Information Page, that is, Moriah Technologies, Inc.
Part Three of the policy covers other states' insurance, and provides, in pertinent part:
PART THREE-OTHER STATES INSURANCE
A. How This Insurance Applies
1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.
2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.
***
4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.
B. NOTICE
Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.
Item 3 of the Information Page, provides, in pertinent part:
A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS
B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
***
C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: NONE.
*403 Our review of the record reveals that neither Louisiana nor any other state was listed under Item 3.A. or under Item 3.C. of the Information Page, and the record contains no notice of work in Louisiana or any other state.
The policy was also amended by several endorsements, including a "Limited Reimbursement for Texas Employees Injured in Other Jurisdictions" that deleted Part Three of the policy, "Other States Insurance," and replaced it with a "Limited Reimbursement Provision." The endorsement reads, in pertinent part:
This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§ 406.071 -.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at last ten working days during the twelve months preceding the date of injury.
Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are not authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with requirements of the workers' compensation laws of any jurisdiction other than Texas.
***
I. Limited Reimbursement Provision
A. How this endorsement applies
This endorsement will reimburse you after you have made payments for benefits for injuries to your Texas employees required of you in another jurisdiction. This reimbursement provision only applies to bodily injury by accident including death or bodily injury by disease including death incurred by your employee who qualifies for Texas workers' compensation benefits under Sec. 406.071 of the Texas Labor Code.
***
II. Exclusions, Limitations and Conditions
The following conditions apply to the reimbursement afforded by this endorsement.
1. Nothing in this endorsement confers jurisdiction in another state or constitutes our doing business in another state.
2. Reimbursement will be made in Texas.
3. Travis County, Texas is the sole venue for any lawsuit involving reimbursement under this endorsement.
(Emphasis added.)
Pursuant to Texas Labor Code § 406.071(a), a Texas employee "who is injured while working in another jurisdiction" is entitled to Texas workers' compensation benefits if "the injury would be compensable if it had occurred in this state" and if "the employee has significant contacts *404 with this state or the employment is principally located in this state." Section 406.071(b) further provides:
An employee has significant contacts with this state if the employee was hired or recruited in this state and the employee:
(1) was injured not later than one year after the date of hire; or
(2) has worked in this state for at least 10 working days during the 12 months preceding the date of injury.
Texas Labor Code § 406.072 provides that the principal employment location of a Texas employee is where "the employer has a place of business at or from which the employee regularly works," or where "the employee resides and spends a substantial part of the employee's working time."
Before addressing the issue of whether the TMIC policy issued to Moriah provided coverage to O'Bannon and Moriah, we must resolve a conflicts of law issue presented by the facts of this case. See La. C.C. arts. 3515 - 3549. A Louisiana appellate court may, on its own initiative, inquire into another state's law, where applicable. Gill v. Matlack, Inc. , 94-2546 (La. App. 1st Cir. 10/6/95), 671 So.2d 395, 398 n.6. O'Bannon and Moriah raised the conflict of law issue in opposition to TMIC's motion for summary judgment and in the briefs to this court. Therefore, TMIC had sufficient notice of the conflicts of law issue.
The issue presently before the court is one of insurance coverage, and therefore one of contract. Id. at 397. Louisiana Civil Code article 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
Louisiana Civil Code article 3537 provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
Furthermore, as noted in our prior opinion, it is well established that where the parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or *405 jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written. See O'Bannon , 196 So.3d at 141 n.8(citing La. C.C. art. 3540 and its Revision Comments; Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note, 95-3317(A) , 2001-2219 (La. App. 1st Cir. 11/20/02), 837 So.2d 11, 42-43, writs denied, 2003-0418 (La. 4/21/03), 841 So.2d 805, 2003-0438 (La. 5/16/03), 843 So.2d 1129, 1130; Melbert v. CompSource Oklahoma , 2014-356 (La. App. 3rd Cir. 10/1/14), 149 So.3d 841, 845 ).
As discussed above, at Item 3.A. of the Information Page, the parties stipulated that the policy applies to the workers' compensation law of Texas. Furthermore, the policy's limited reimbursement endorsement expressly limited reimbursements to Texas and set forth the venue for any lawsuits involving reimbursements as Travis County, Texas. In light of the stipulations made by the parties in the policy, we find that Texas law should be applied in determining whether the policy provided coverage to O'Bannon and Moriah.
Our review of the record reveals that neither Louisiana nor any other state was listed under Item 3.A. or under 3.C. of the Information Page, which expressly provides that the policy applies to the workers' compensation law of the State of Texas. Based on the clear and unambiguous terms of the policy, O'Bannon and Moriah are not entitled to receive benefits under the LWCA.
Furthermore, O'Bannon and Moriah are not entitled to coverage under the policy based on the limited reimbursement endorsement for Texas employees injured in other jurisdictions. The endorsement does not apply to "[e]mployees hired or recruited by you outside Texas to work in another state;" the endorsement only applies to Texas employees as defined by Texas Labor Code §§ 406.071 -072. First, there is no evidence that O'Bannon's injury would be compensable if it had occurred in Texas. See Texas Labor Code § 406.071(a)(1). TMIC disputed the compensability of O'Bannon's claims for workers' compensation benefits in Texas, which O'Bannon has not challenged in the Texas Division of Workers' Compensation ("DWC"). TMIC asserted that following his accident, O'Bannon reported his injury to Moriah and TMIC in July 2012, seeking Texas workers' compensation benefits. In August 2012, TMIC denied compensability and refused to pay benefits to O'Bannon. O'Bannon then filed a disputed claim for compensation in Louisiana in October 2012, seeking workers' compensation benefits under the LWCA.
Second, O'Bannon did not have significant contacts with Texas, and his employment with Moriah was not principally located in Texas. See Texas Labor Code §§ 406.071(a)(2), (b), and 406.072. Although O'Bannon was hired by Moriah following a meeting in November 2011 that occurred in Texas, O'Bannon lived in Louisiana when he was hired. Immediately following the Texas meeting, O'Bannon departed for Tennessee to begin work. At all times relevant herein, the majority of the work O'Bannon performed for Moriah occurred in Tennessee and Louisiana. O'Bannon was working at a jobsite in Louisiana at the time of his accident and injury. See O'Bannon , 196 So.3d at 131.
Furthermore, Moriah cannot satisfy the first condition of the policy's limited reimbursement endorsement, which only applies to "payments for benefits for injuries to your Texas employees." There is no evidence in the record that Moriah made any workers' compensation payments to O'Bannon based on his disputed claim for *406 compensation. Additionally, O'Bannon is not a Texas employee as described in the Texas Labor Code §§ 406.071 -.072 as discussed above. Under the clear and unambiguous terms of the policy and the workers' compensation law of Texas, O'Bannon and Moriah are excluded from coverage and are not entitled to benefits pursuant to the LWCA.
CONCLUSION
Based on the record and the foregoing law and analysis, we hold that TMIC's workers' compensation insurance policy issued to Moriah does not provide Louisiana workers' compensation insurance coverage to O'Bannon. Furthermore, the policy does not provide Louisiana workers' compensation insurance coverage in favor of Moriah for O'Bannon's accident. Therefore, pursuant to the policy, TMIC has no duty to defend, indemnify, or reimburse Moriah for the claims of O'Bannon made in the Louisiana OWC.
DECREE
The motion to supplement the appellate record with copies of the January 5, 2016 judgment of the 261st JDC of Travis County, Texas in Texas Mutual Insurance Company v. Moriah Technologies, Inc. , cause no. D-1-GN-14-000479, and the June 13, 2017 judgment of the 14th JDC in Calcasieu Parish, Louisiana filed by the defendant/appellant, Texas Mutual Insurance Company, is denied.
The portion of the January 20, 2017 judgment of the Workers' Compensation Judge for District 06 of the Louisiana Office of Workers' Compensation giving full faith and credit to the January 5, 2016 judgment of the 261st JDC of Travis County, Texas in Texas Mutual Insurance Company v. Moriah Technologies, Inc. , cause no. D-1-GN-14-000479, is hereby reversed. The judgment is affirmed in all other respects. All costs of this appeal are cast to the plaintiff/appellant, Adam O'Bannon.
MOTION TO SUPPLEMENT DENIED; JUDGMENT REVERSED IN PART AND AFFIRMED IN ALL OTHER RESPECTS.
McClendon, J. concurs with reasons

The WCJ's original January 13, 2015 judgment did not address the claim asserted by O'Bannon against TMIC. This court issued an interim order inviting the WCJ to rule on O'Bannon's claim against TMIC. On March 31, 2016, the OWC supplemented the record with an amended and supplemental judgment dismissing O'Bannon's claims against TMIC, with prejudice, as well as with written reasons for final judgment addressing the decision to dismiss O'Bannon and Moriah's claims against TMIC.

This court also awarded O'Bannon additional attorney fees for the defense of the appeal. O'Bannon, 196 So.3d at 142.

Five months after the WCJ granted summary judgment in favor of TMIC, giving "full faith and credit" to the Texas judgment, TMIC obtained the June 13, 2017 judgment from the 14th JDC in Calcasieu Parish, which is where counsel for TMIC is located. TMIC petitioned the 14th JDC to make the Texas judgment executory in Louisiana in accordance with the LEFJA. The LEFJA requires a party to file an ex parte petition, annex the properly authenticated foreign judgment, and include a prayer "that the judgment be made executory in a court of this state. " (Emphasis added.) See La. R.S. 13:4242.

See Texas Ins. Code §§ 2054.102 and 2054.151; see also Liberty Mut. Ins. Co. v. Texas Dep't of Ins. , 187 S.W.3d 808, 814 (Tex. App.-Austin 2006).

In the memorandum filed in support of its motion for summary judgment, TMIC referenced the policy of insurance issued to Moriah, which it noted was also introduced into evidence during the trial of this matter. TMIC also attached a copy of the insurance policy to its motion for summary judgment; however, the policy TMIC actually attached was a policy issued to a corporation called Halas Structures, Inc., not the policy issued to Moriah.
In opposition to TMIC's motion for summary judgment, O'Bannon and Moriah adopted and offered "all of the exhibits and testimony previously offered and accepted at the trial of this matter by all of the parties." Louisiana Code of Civil Procedure article 966(D)(2) states that the "court may consider only those documents filed in support of or in opposition to the motion for summary judgment." In this instance, O'Bannon and Moriah offered all of the trial exhibits in opposition to TMIC's motion. Although those exhibits had already been made part of the record, the exhibits were specifically offered by the parties in opposition to TMIC's motion for summary judgment; therefore, those exhibits do not constitute "other materials in the record." See Comment (k), Revisions Comments-2015, La. C.C.P. art. 966 ; c.f. Unifund CCR Partners v. Perkins , 2012-1851 (La. App. 1st Cir. 9/25/13), 134 So.3d 626, 632 (Mover introduced the "entire record" at the hearing of its motion for summary judgment; however, the only additional documents in the record were the petition, two unanswered requests for admissions of fact, and an answer to the petition, none of which established any material facts.).