STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2022 CA 0134

WILTON AND SABENA CROCHET

VERSUS

NICK'S REFRIGERATION SALES AND SERVICE, INC., UNITED FIRE &
INDEMNITY COMPANY AND NATIONWIDE GENERAL INSURANCE
COMPANY

**Judgment Rendered:**

**DEC 2 2 2022**

\* \* \* \* \* \*

On appeal from the
Sixteenth Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
Docket Number 133583

Honorable Roger P. Hamilton, Judge Presiding

\* \* \* \* \* \*

S. Patrick Skiles             Counsel for Plaintiffs/Appellants
Lloyd T. Bourgeois, Jr.       Wilton Crochet and Sabena Crochet
Morgan City, LA

David Ardoin
Thibodaux, LA


William A. Repaske            Counsel for Defendant/Appellee
Adrian G. Nadeau             United Fire & Indemnity Company
New Iberia, LA

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY, McCLENDON, WOLFE,
AND HESTER, JJ.

J. Hester concurs in part and dissents in part and assigns reasons.

Whipple, C.J. dissents for reasons assigned.

**GUIDRY, J.**

This matter is before us on appeal by the plaintiffs from a judgment of the trial court that denied their motion for partial summary judgment, granted summary judgment in favor of the defendant, and dismissed the plaintiffs' claims with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

In connection with the renovation of their home in July of 2014, plaintiffs Wilton and Sabena Crochet (the Crochets) hired Nick's Refrigeration Sales and Service, Inc. (Nick's Refrigeration) to install an air conditioning unit in their attic along with a duct system and attic insulation. Shortly after renovations were complete, plaintiffs began experiencing issues with moisture, condensation, and "sweating" in their attic and on the ceiling of their home, causing mold and mildew. Thereafter, on or about July 6, 2017, a portion of the plaintiffs' ceiling fell in due to accumulated moisture. Plaintiffs contacted their homeowner's insurer, United Fire & Indemnity Company ("UFIC"), the defendant herein, and ultimately filed a claim under their homeowner's policy for the resulting damages. On August 14, 2017, plaintiffs were notified by UFIC that there was no coverage under their policy. Plaintiffs subsequently filed suit, on March 29, 2019, against UFIC, as well as Nick's Refrigeration and its insurer, for all losses resulting from the damage to their home.[1]

On July 27, 2021, plaintiffs filed a motion for partial summary judgment as to coverage, contending there is no issue of material fact that they are afforded coverage under the policy with UFIC for the ensuing losses that occurred as a

---

[1] Plaintiffs initially named their homeowner's insurer as "United Fire Group." However, in a first supplemental and amending petition, plaintiffs replaced "United Fire Group" with "United Fire & Indemnity Company." We note that UFIC filed an answer to the petition in the form of a general denial. UFIC further affirmatively pled that any damages sustained by plaintiffs were the result of poor workmanship and/or the fault of third parties and thus asserted a cross claim against Nick's Refrigeration. Following a settlement agreement, plaintiffs and UFIC dismissed their claims against Nick's Refrigeration and its insurer, Western World Insurance Company, which was initially named as Nationwide General Insurance Company.

2

result of the July 6, 2017 event. UFIC also filed a motion for summary judgment as to coverage, on August 20, 2021, contending there is no genuine issue of material fact regarding the lack of coverage afforded plaintiffs under their homeowner's policy and that plaintiffs' claims against it should be dismissed.

Following a hearing on September 22, 2021, the trial court denied plaintiffs' motion for partial summary judgment and granted UFIC's cross motion for summary judgment. On September 30, 2021, the trial court signed a judgment in conformity with its ruling, dismissing plaintiffs' claims against UFIC with prejudice. Plaintiffs now appeal, contending that the trial court erred in granting UFIC's motion for summary judgment and denying plaintiffs' motion for summary judgment. The plaintiffs also contend that the trial court misinterpreted the plain language of the policy relied on by UFIC to assert a policy exclusion in denying coverage for their claims.[2]

## DISCUSSION

Appellate courts review the grant or denial of a motion for summary judgment *de novo* under the same criteria governing the trial court's determination of whether summary judgment is appropriate. Huggins v. Amtrust Insurance Company of Kansas, Inc., 20-0516, pp. 3-4 (La. App. 1st Cir. 12/30/20), 319 So. 3d 362, 365. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); Bosse v. Access Home

---

[2] The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. Pelle v. Munos, 19-0549, p. 5 (La. App. 1st Cir. 2/19/20), 296 So. 3d 14, 18, n.2. Where there are cross motions for summary judgment raising the same issues, however, this court can review the denial of a summary judgment in addressing the appeal of the grant of the cross motion for summary judgment. Huggins v. Amtrust Insurance Company of Kansas, Inc., 20-0516, p. 3 (La. App. 1st Cir. 12/30/20), 319 So. 3d 362, 365. Here, the motions for summary judgment by plaintiffs and UFIC both seek a determination of coverage under the policy. Thus, we will review the denial of plaintiffs' motion in conjunction with plaintiffs' appeal of the grant of UFIC's cross motion.

3

Insurance Company, 18-0482, p. 4 (La. App. 1st Cir. 12/17/18), 267 So. 3d 1142, 1145.

Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which coverage could be afforded when applied to the undisputed material facts shown by the evidence supporting the motion. Miller v. Superior Shipyard & Fabrication, Inc., 01-2683, p. 4 (La. App. 1st Cir. 11/8/02), 836 So. 2d 200, 203. Furthermore, policy exclusions must be clearly stated. See La. C.C. art. 2057; Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So. 2d 1250, 1252 (La. 1993). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. O'Bannon v. Moriah Technologies, Inc., 17-0728, p. 10 (La. App. 1st Cir. 3/29/18), 248 So. 3d 392, 400.

In support of their motion for summary judgment, plaintiffs attached: the UFIC policy; a July 29, 2014 invoice from Nick's Refrigeration; excerpts of the depositions of Wilton and Sabena Crochet; photographs of the damage to their home; a July 20, 2017 letter from UFIC to Wilton Crochet; an August 14, 2017 letter from UFIC to Wilton Crochet; excerpts of UFIC's answers to interrogatories; excerpts of the deposition of Nick Edrington IV; and a November 6, 2020 report prepared by the Rimkus Consulting Group, Inc. The plaintiffs contend that UFIC's policy language provides coverage for the ensuing damages that followed the faulty workmanship in the installation of the air conditioning system, duct work, insulation, and corrective work in the plaintiffs' home.

In opposition to plaintiffs' motion for summary judgment and in support of its own motion for summary judgment UFIC offered: the deposition of Wilton Crochet; the UFIC policy; the deposition of Mr. Edrington; the deposition of

4

Sabena Crochet; the affidavit of Neil Santolucito; and a copy of the petition for damages.[3]

UFIC relies, in part, on Section 2 of the "Exclusions" in its policy as a basis for denying coverage. UFIC's policy provides in part as follows:

*SECTION I – PERILS INSURED AGAINST*

*COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES*
We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

1. Caused by:
...
e. Any of the following:

(1) Wear and tear, marring, deterioration;
(2) Inherent vice, latent defect, mechanical breakdown;
(3) Smog, rust or other corrosion, mold, wet or dry rot;
...

(6) Settling, shrinking bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings[.]
...

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the costs of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I -Exclusion

---

[3] Under La. C.C.P. art. 966(D)(2), the court "shall consider any documents to which no objection was made." Thus, to the extent that any of the exhibits offered in support of or in opposition to the motions are not proper summary judgment evidence, we will consider the same in conducting our *de novo* review herein. See Tennie v. Farm Bureau Property Insurance Company, 20-1297, pp. 9-10 (La. App. 1st Cir. 6/4/21), 327 So. 3d 1020, 1027, n.5 and n.6, writ denied, 21-00949 (La. 10/19/21), 326 So. 3d 231. However, to the extent that plaintiffs attempted to submit additional documentation in support of their motion and in conjunction with their reply memorandum (plaintiffs attached a November 1, 2019 report prepared by Driskill Environmental Consultants, L.L.C.), we note that no additional documents may be filed with the reply memorandum. See La. C.C.P. art. 966(B)(3). Thus, we are precluded from considering the Driskill report in our *de novo* review.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

\*\*\*

## SECTION I – EXCLUSIONS

1. *We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*

. . .

2. *We do not insure for loss to property described in Coverages A and B caused by any of the following.* However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

...

c. *Faulty, Inadequate or defective:*

...

(2) *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction*;
(3) *Materials used in repair, construction, renovation or remodeling*; or
(4) *Maintenance;*
of part or all of any property whether on or off the "residence premises." [Emphasis added.]

Additionally, the summary judgment evidence consists of a report prepared by Bryson M. Brewer, Ph.D., P.E., who opined that the air conditioning unit, insulation, duct work, and repair measures by Nick's Refrigeration caused increased humidity, condensation, and moisture in the plaintiffs' home. Dr. Brewer opined that the elevated dew point temperatures in the attic created conditions that most likely led to the suspected fungal growth observed on the ceilings of the kitchen and bathrooms in the residence, and also allowed for the occurrence of higher moisture content and possible condensation on the ceiling drywall.

Moreover, the undisputed deposition testimony from Nick Edrington IV, the owner of Nick's Refrigeration, established that the air conditioning unit played a role in causing the excessive moisture and ceiling collapse in the plaintiffs' home.

6

Mr. Edrington conceded that an air flow setting on the gas furnace was improperly set, causing the blower to operate improperly. This, he opined, caused plaintiffs to lower the temperature setting. As a result, the ceiling became so cold that moisture in the attic was attracted to the sheetrock through the insulation and, with the increased weight, the sheetrock separated from the ceiling joists. According to Mr. Edrington, the sheetrock fell in due to "the [air conditioning] *system itself and the issues with the system.*"[4]

On *de novo* review of this matter, we find no genuine issue of material fact remaining as to whether coverage is afforded to the plaintiffs. That is, we find that section 2 of the exclusions precludes coverage under the terms of the policy herein. Under the plain language of the policy, damage resulting from faulty workmanship as well as damage resulting from defective materials used in a repair or renovation and/or faulty or inadequate maintenance is not covered. Such is the case here.

Further, we do not find that the exclusion language is subject to a reasonable interpretation allowing for coverage under the facts of this case. Rather, we find that the policy language is clear and unambiguous in excluding the damage to the plaintiffs' property, which was undisputedly caused by or resulted from faulty workmanship and faulty installation of the air conditioning system.

Finally, because a reading of the exclusionary language makes it clear that loss to property resulting from faulty, inadequate, or defective workmanship, renovation, or remodeling is excluded, and therefore not covered, we find no inherent ambiguity in the policy provision stating, "ensuing loss to the property ...

---

[4] We also note that the plaintiffs, in their petition, claim that Nick's Refrigeration failed to exercise reasonable care in installing the air conditioning unit, duct work, and insulation and failed to adequately inspect, observe, and recognize the abundant evidence of faulty installation of the air conditioning unit, duct work, and insulation.

7

not excluded ... is covered."[5] While the policy may not make clear what ensuing or resulting loss *is* covered under the exclusion, the policy makes sufficiently clear loss that *is not* covered. We note that an insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. See La. C.C. art. 2050; Hill v. Shelter Mutual Insurance Company, 05-1783, p. 3 (La. 7/10/06), 935 So. 2d 691, 694. Efforts to interpret insurance contracts must not be undertaken in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms. Cadwallader v. Allstate Insurance Company, 02-1637, p. 3 (La. 6/27/03), 848 So. 2d 577, 580.

On the summary judgment record before us, the plaintiffs have not proved their loss is covered under the policy herein. See Huggins, 20-0516 at p. 4, 319 So. 3d at 365. The insurer, UFIC, however, has met its burden of proving the applicability of its policy exclusions. See Doerr v. Mobil Oil Corporation, 00-0947, p. 5 (La. 12/19/00), 774 So. 2d 119, 124, modified on other grounds on rehearing, 00-0947 (La. 3/16/01), 782 So. 2d 57. We find no genuine issue of material fact remaining. We conclude that UFIC is entitled to summary judgment as a matter of law.

## CONCLUSION

For the above and foregoing reasons, the September 30, 2021 judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs/appellants, Wilton Crochet and Sabena Crochet.

**AFFIRMED.**

---

[5] The plaintiffs argue that this provision is ambiguous and therefore must be construed in their favor. See La. C.C. art. 2056; Anderson v. State Farm Fire & Casualty Insurance Company, 10-0036, p. 5 (La. App. 1st Cir. 7/6/10), 42 So. 3d 1140, 1144.

8

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0134

WILTON AND SABENA CROCHET

CHH

VERSUS

NICK'S REFRIGERATION SALES AND SERVICE, INC., UNITED
FIRE & INDEMNITY COMPANY AND NATIONWIDE GENERAL
INSURANCE COMPANY

**HESTER, J., concurring in part and dissenting in part.**

While I agree with the denial of plaintiffs' motion for summary judgment, I do not find that United Fire & Indemnity Company's (UFIC) motion for summary judgment should have been granted. I find that genuine issues of material fact remain, precluding the grant of any summary judgment.

Additionally, I write separately to make clear that, pursuant to our *de novo* review, we consider any non-objected to exhibits and determine whether we should give any evidentiary value thereto. See **Pottinger v. Price**, 2019-0183 (La. App. 1st Cir. 10/23/19), 289 So.3d 1047, 1053; **Jones v. Louisiana Medical Center and Heart Hospital, LLC**, 2020-0551 (La. App. 1st Cir. 12/30/20), 2020 WL 7770927 *1, n.1 (unpublished). The trial court, and this court on *de novo* review, may only consider evidence that is admissible under the express provisions of La. Code Civ. P. arts. 966 and 967. **Huggins v. Amtrust Insurance Company of Kansas, Inc.**, 2020-0516 (La. App. 1st Cir. 12/30/20), 319 So.3d 362, 366. See also **AG Resource Management, LLC. v. Bunge North America, Inc.**, 53,417 (La. App. 2d Cir. 3/4/20), 293 So.3d 1179, 1186 (finding that a court is required to consider any item

on the exclusive list set forth in La. C.C.P. art 966(A)(4) if the opponent does not object to it).

In this matter, the copies of the insurance policy attached to both plaintiffs' motion and UFIC's motion do not appear to be authenticated or sworn to in any way and, therefore, are not competent summary judgment evidence. Without the insurance policy, plaintiffs could not carry their burden of coverage under the policy and UFIC could not carry their burden of establishing the applicability of exclusions to coverage. Moreover, the invoice, photographs, letters, and report attached to plaintiffs' motion are not competent summary judgment evidence, as they were not attached to any affidavit or deposition or otherwise authenticated, and could not serve to carry plaintiffs' burden of proof. See **Pottinger** at 1053-54. Finally, answers to interrogatories may be filed in support of or in opposition to a motion for summary judgment pursuant to La. Code Civ. P. art. 966(A)(4). However, answers that are neither made under oath nor an attestation made before a notary public that the interrogatories were answered under oath, are not competent summary judgment evidence. **Dowdle v. State Through Dep't of Culture, Recreation, & Tourism,** 2018-878 (La. App. 3d Cir. 5/15/19), 272 So.3d 77, 83; La. Code Civ. P. art. 966, comments—2015, comment (c) (La. Code Civ. P. art. "1458 requires that interrogatories be answered under oath, and only answers that are made under oath may be filed in support of or in opposition to a motion for summary judgment."). Accordingly, the excerpts of answers to interrogatories attached to plaintiffs' motion are not competent summary judgment evidence.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2022 CA 0134

 WILTON AND SABENA CROCHET

VERSUS

NICK'S REFRIGERATION SALES AND SERVICE, INC., UNITED FIRE
& INDEMNITY COMPANY AND NATIONWIDE GENERAL INSURANCE
COMPANY

**Whipple, C.J., dissenting.**

Because I find the policy exclusion relied on by the trial court in denying

coverage to be ambiguous, I respectfully disagree with the majority opinion herein.

Summary judgment is appropriate for determining whether an insurance

policy provides or excludes coverage. Bosse v. Access Home Insurance Company,

2018-0482 (La. App. 1st Cir. 12/17/18), 267 So. 3d 1142, 1145. Once the insured

bears the initial burden of proving his loss is covered by the policy, the insurer then

has the burden of proving the applicability of policy exclusions. Huggins v. Amtrust

Insurance Company of Kansas, Inc., 2020-0516 (La. App. 1st Cir. 12/30/20), 319 So.

3d 362, 365. Summary judgment declaring a lack of coverage under an insurance

policy may not be rendered unless there is no reasonable interpretation of the policy

under which coverage could be afforded when applied to the undisputed material

facts shown by the evidence supporting the motion. Miller v. Superior Shipyard &

Fabrication, Inc., 2001-2683 (La. App. 1st Cir. 11/8/02), 836 So. 2d 200, 203.

An insurance policy is a contract between the parties and is subject to the basic

rules of contract interpretation found in the Louisiana Civil Code. See LSA-C.C.

arts. 2045, *et seq.*; Mayo v. State Farm Mutual Automobile Insurance Company, 2003-1801 (La. 2/25/04), 869 So. 2d 96, 99. Interpretation of a contract is the determination of the parties' common intent. LSA-C.C. art. 2045. The parties' intent, as reflected by the policy's wording, determines the extent of coverage. Huggins, 319 So. 3d at 367. In ascertaining the common intent, words and phrases in a policy must be given their generally prevailing meaning. See LSA-C.C. art. 2047. When the words of a policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and the policy must be enforced as written. See LSA-C.C. art. 2046.

Insurance policies are meant to effect coverage, and therefore, the contract is additionally interpreted to effect coverage where possible. O'Bannon v. Moriah Technologies, Inc., 2017-0728 (La. App. 1st Cir. 3/29/18), 248 So. 3d 392, 400. However, if an ambiguity remains after applying the general rules of contractual interpretation to an insurance contract, the ambiguous contractual provision is construed against the insurer who furnished the contract's text and in favor of the insured. See LSA-C.C. art. 2056; Anderson v. State Farm Fire & Casualty Insurance Company, 2010-0036 (La. App. 1st Cir. 7/6/10), 42 So. 3d 1140, 1144. Policy exclusions must be clearly stated. LSA-C.C. art. 2057; Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So. 2d 1250, 1252 (La. 1993). Moreover, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. O'Bannon, 248 So. 3d at 400. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Billiot v. Terrebonne Parish Sheriff's Office, 98-0246 (La. App. 1st Cir. 2/19/99), 735 So. 2d 17, 24, writ denied, 99-1376 (La. 7/2/99), 747 So. 2d 22, citing Breland v. Schilling, 550 So. 2d 609, 610-611 (La. 1989).

2

UFIC relies on Section 2 of the Exclusions Section of the policy as a basis for denying coverage, which provides as follows:

*We do not insure for loss to property* described in Coverages A and B *caused* by any of the following [faulty, inadequate, defective design, workmanship, renovation, remodeling, construction, repair]. *However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.* [Emphasis added.]

While the policy does not define "ensuing loss," "ensue" is defined as "[t]o follow after; to following order or train of events." Blacks Law Dictionary 530 (6ᵗʰ ed. 1990). In my view, the damages sustained by plaintiffs "ensued" from, or "followed," the actions taken by Nick's Refrigeration in the installation and corrective measures taken regarding the AC system, duct work, and insulation, and are thus covered under the policy.

Mr. Edrington IV, the owner of Nick's Refrigeration, opined that the AC system he installed played a role in causing the excessive moisture and that an air flow setting on the gas furnace was improperly set, which caused the blower to operate at an incorrect power level. He opined that the installation caused plaintiffs to lower the temperature setting, and, as a result, the ceiling became so cold that moisture in the attic was attracted to the sheetrock through the insulation and, with the increased weight, the sheetrock separated from the ceiling joists.

The Rimkus report prepared by Bryson M. Brewer, Ph.D., P.E. concluded that the AC system, insulation, duct work, and repair measures by Nick's Refrigeration caused the increased humidity, condensation, and moisture in the home. Dr. Brewer opined that the attic was improperly ventilated due to improper installation of blown-in insulation during the renovation, which was later exacerbated by sealing the openings of the two turbine vents, which led to high humidity and elevated dew point temperatures in the attic space. He further opined that the elevated dew point temperatures in the attic created conditions that most likely led to the suspected fungal growth observed on the ceilings of the kitchen and bathrooms in the

3

residence, and also allowed for the occurrence of higher moisture content and possible condensation on the ceiling drywall.

In my opinion, while the policy excludes the "repair" of faulty workmanship, the policy language does provide coverage for the *ensuing* damages that followed the faulty workmanship in the installation of the AC system, duct work, insulation, and corrective work in plaintiffs' home. To the extent that the majority interprets the policy language differently, I note that where a policy is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Moreover, any disagreement as to the cause of the excess moisture presents a question of material fact, which precludes summary judgment.[1]

---

[1]Similar policy language has been interpreted by other courts. In Husband v. Lafayette Insurance Company, 93-815 (La. App. 5th Cir. 3/16/94), 635 So. 2d 309, 311-312, the court interpreted a 'Dwelling Policy" with a "Landlord Premise Liability Endorsement" on an "All Risk" format. While the policy stated that it did not ensure for loss to property caused by faulty design, workmanship, repair, construction, renovation, remodeling, the next sentence stated, "However, any ensuing loss not excluded is covered." The trial court found the language in the exclusion to be patently ambiguous and thus, invalid. In doing so, the trial court noted, "This ambiguous language, if construed in favor of the insured, writes out the exclusion relied upon by defendant." Husband, 635 So. 2d at 312. The trial court further noted that the policy did not contain a definition of "ensuing loss." Husband, 635 So. 2d at 312. Accordingly, on review, the Fifth Circuit agreed that the policy language was ambiguous, and thus affirmed the trial court.

In Dawson Farms, L.L.C. v. Millers Mutual Fire Insurance Company, 34,801 (La. App. 2nd Cir. 8/1/01), 794 So. 2d 949, writ denied, 803 So. 2d 34 (La. 2001), and writ denied sub nom. Dawson Farms, Inc. v. Millers Mutual Fire Insurance Company, 803 So. 2d 37 (La. 2001), a case relied upon by plaintiffs, similar language was interpreted in an agribusiness "all risk" policy insuring a climate-controlled warehouse and its contents. The exclusionary language provided: "We will not pay for physical loss of or damage to property caused directly or indirectly by any of the following (faulty design and workmanship). We will pay for resulting 'loss' caused by a peril insured." Dawson Farms, L.L.C., 794 So. 2d at 952. When condensation accumulated in the refrigerated facility and fell on a crop of sweet potatoes thus destroying the crop, the insurer denied coverage, claiming the policy covered only water damage directly resulting from the breaking or cracking of a water or stream system and not water damage from condensation. Dawson argued the language was ambiguous. However, the trial court rendered judgment in favor of the insurer in conformity with a jury verdict. Interpreting the exclusionary language, the Second Circuit found that the accumulation of condensation that eventually fell on the sweet potatoes was a peril insured under the policy. In doing so, the court noted that the policy provided for the exclusion of damages caused by faulty design and construction, but also stated in the next sentence that the insurer would pay for a resulting loss caused by a peril insured. The court held that the "paragraph is meaningless unless the cost of repairing the poor workmanship and design is excluded from coverage while any damage resulting from it is covered." Dawson Farms, L.L.C., 794 So. 2d at 952. The court noted that in interpreting the policy:

> The test for construing an insurance policy is not what the insurer intended the words to mean, but, how the words would have been understood by a reasonable person in the shoes of the insured. The policy should be read as a layman would have read it and not as it might be analyzed by an insurance expert. The plain and obvious meaning of the words should be used in determining the coverage provided

4

On review of the evidence set forth on the motion for summary judgment, I find the exclusion provision language relied upon herein by UFIC to be ambiguous, which therefore must be construed against the insurer, who furnished the contract's text, and in favor of the insured. See LSA-C.C. art. 2056. Accordingly, I find no basis for concluding that Section 2 of the exclusion clause precludes coverage under the policy.[2]

For these reasons, I find the trial court erred in relying on an ambiguous policy exclusion in denying plaintiff's partial motion for summary judgment and in granting UFIC's motion for summary judgment and thereby dismissing plaintiffs' claims. Accordingly, I would reverse the September 30, 2021 judgment of the trial court and remand this matter to the trial court for further proceedings.

---

under the policy. All doubts and ambiguity should be resolved in favor of coverage.

Dawson Farms, L.L.C., 794 So. 2d at 952. (Citation omitted.)

To the extent that UFIC attempts to distinguish Dawson on the basis that it involved an "all risk" policy, as opposed to a homeowner's policy, this distinction has no bearing on the interpretation of the exclusionary language in the policy.

[2] I further reject UFIC's contention that plaintiffs have failed to abide by the Conditions provision of the policy, which it contends imposes a duty on plaintiffs to protect the property from further damage, by determining the cause of the issues and repair. Plaintiffs testified that they immediately reported the loss to UFIC then submitted a repair estimate from DDA Construction in the amount of $7,500.00, which UFIC denied. Mrs. Crochet testified that following his inspection, the UFIC adjuster advised them that they would have to find the source of the moisture. Mr. Crochet testified that he repeatedly contacted Nick's Refrigeration, who sent someone out to attempt to make repairs, contacted Mr. Percy Martin with Healthy Airduct Cleaning Mold Remediation concerning the mold, who opined that all of the insulation and duct works would have to be removed, and contacted Jose Delgado with Insulation Technologies, who opined that the blown insulation was blocking the airflow. Thus, in my opinion, the record does not support UFIC's contention that under the facts herein, it is entitled to judgment as a matter of law because plaintiffs failed to make efforts to protect their property from further damage.

5